Roberts, Admr. *v.* Morgan.

---

MARTIN ROBERTS, *Administrator of* SILAS SUTHERLAND'S ESTATE *v.* CEPHAS MORGAN.

*Tenants in common. Ejectment. Administrator.*

A conveyance by one joint tenant or tenant in common of all his interest in real estate, though the land is described in such a manner as to pass the whole under the deed, if the grantor had owned the whole, is not notice of itself to the other joint owner or tenant in common of any such exclusive

claim to the land on the part of the grantor, as to oust the other tenant of his legal seizin in the land.

If one joint owner or tenant in common of land claim to have obtained title to the whole by an adverse possession for more than fifteen years, he must, in order to sustain such claim, prove notice to, or knowledge on, the part of the other tenant of such adverse and hostile claim, and the statute will run against his co-tenant only from the time the latter receives such notice or obtains such knowledge.

The conveyance by a warranty deed of the whole of a piece of land by one tenant in common in possession, accompanied by possession of the whole on the part of the grantee, constitutes an ouster, for which the other tenant in common may maintain ejectment against the party in possession.

In ejectment against the heir of an intestate, to recover possession of land of which the latter died seized, the action being brought by his administrator, who, however, was not appointed till sixteen years after the intestate's death, and who did not show that there were any debts outstanding against the estate, or that the intestate left any other heirs than the defendant; *Held*, that the administrator could not recover.

EJECTMENT for four acres of land in Manchester. Plea, not guilty, and trial by the court, at the June Term, 1857,—KITTREDGE, J., presiding.

The plaintiff proved that Joseph French, who owned the land described in the declaration, with other lands in Manchester, died in 1814, leaving a widow and several children; that the land declared for, with two other pieces of land, were set off as dower to his widow, Mary French; that Martin French, one of his sons, owned the reversionary interest in two-thirteenth parts of said dower, and conveyed on the 2d day of December, 1826, by quit claim deed, all his interest in said reversion to his brother, Joel French; and also that Joel French on the 18th day of February, 1828, conveyed all his interest so derived from Martin by quit claim deed to Marilla French; and that Marilla French on the 8th day of April, 1828, conveyed all her interest in Martin French's share in said reversion by warranty deed to Silas Sutherland, which last mentioned deed was not recorded till the 2d day of August, 1839.

The plaintiff also proved that Mary French died in 1838, and occupied the land in which her dower was set out till her death, and that said land was then divided among the heirs of Joseph French, in March, 1839, by commissioners appointed by the probate

court, and that the land described in the declaration, together with another piece of land containing four acres and one third, was set to Martin French as his share in the reversion of the dower. Martin French's share in said land was appraised by the commissioners at the sum of one hundred and thirty-one dollars and sixty cents. The land described in the declaration was appraised at forty dollars, and the other piece set to Martin French, at ninety-one dollars and sixty-six cents, which made two-thirteenth parts of said reversion.

The plaintiff also proved that Silas Sutherland removed to the state of Illinois in the year 1839, where he died in 1840, and that the plaintiff was appointed his administrator on the 17th day of April, 1856, and that the defendant was in possession of the land in question at the time this suit was commenced.

The plaintiff offered no testimony tending to prove that he, or Silas Sutherland, or any person claiming under Sutherland, had ever demanded the premises, or requested to be admitted into the occupancy of the same.

The defendant offered in evidence a record of a judgment recovered by Lucy Beardsley against Martin French, on the 27th day of September, 1823, and an execution issued thereon, the same date, and a levy of said execution made on the 24th day of November, 1823, on one-thirteenth and one-fourth of one-thirteenth part of the reversionary interest in the dower of Mary French, and proved that Lucy Beardsley died in the year 1834, and that Price Beardsley was her father and sole heir to her estate.

The defendant also proved that Joel French purchased of Price Beardsley his title to Martin French's share in the reversion of said dower, and took a quit claim deed of the same, dated May 2d, 1839, to John Chapman for his own benefit.

The defendant also proved that in the month of May, 1839, John Chapman, acting for Joel French, and Silas Sutherland submitted the question of their respective titles to the share of Martin French in said reversion, to two lawyers in Manchester, and agreed to be governed by their opinion, and these lawyers decided that Sutherland owned three-eighths and the said Chapman owned five-eighths of Martin French's share. The defendant then proved that on the 28th day of May, 1839, Silas Sutherland conveyed by quit claim

22

deed to one Califf Monroe, all his interest in the lot of four and one-third acres, not embraced in this suit, for the consideration of one hundred dollars, and that Monroe on the 14th day of August, 1843, conveyed the same, by quit claim deed to the said Joel French, for the consideration of one hundred and eight dollars.

The defendant also proved that Joel French went into possession of the land described in the declaration in the spring of 1839, and claimed the entire lot as his own, and during the same season leased it to one David Colson, who occupied it four years, and that in 1843 Joel French leased it to Cephas Morgan, the present defendant, then and now the husband of a daughter of Silas Sutherland, who occupied the entire lot till the 27th day of August, 1847, when Joel French conveyed the same by warrantee deed to Benjamin Morgan, the father of the defendant, who has since died, leaving the defendant as his heir.

The defendant also gave in evidence a quit claim deed of the share of Martin French in said reversion, from John Chapman to James Purdy, dated April 11th, 1840, and a quit claim deed of the same from James Purdy to Joel French, dated June 2, 1842, and proved that the deed from Chapman to Purdy was given for the benefit of Joel French.

The court adjudged that the plaintiff recover, as the administrator of Silas Sutherland, three undivided eighth parts of the land described in the declaration.

Exceptions by the defendant.

*A. L. Miner*, and *Daniel Roberts*, for the defendant.

1. The plaintiff's claim is barred by the statute of limitations. Joel French went into possession of and claimed the *entire lot* as his own in 1839, and continued this claim up to the commencement of this suit, a period of more than fifteen years. This constituted an ouster of Sutherland, and the statute runs from the time that he so entered under that claim.

2. The legal inference from the conveyances made part of the case, is that there was an arrangement between Sutherland and Joel French, that the former was to have his share solely in the lot conveyed by him to Califf Monroe.

3. The present defendant had not only all the title Joel French

possessed, being the son and heir of Benjamin Morgan, to whom Joel French conveyed, with the benefit of seventeen years exclusive possession; but also the full right to all the interest Sutherland had in the land (if indeed he had any), because he married Sutherland's daughter, and was his heir.

*H. K. Fowler*, for the plaintiff.

The opinion of the court was delivered by

POLAND, J. The defendant objects to the correctness of the judgment of the county court upon several grounds.

I. The defendant claims that he has acquired a valid title to the interest of Silas Sutherland, in the land sued for by an adverse possession of more than fifteen years, in himself, and those under whom he claims title.

It appears to have been conceded on the trial below, that in March, 1839, the piece of land in question, and another piece, were properly set out as the share of Martin French, in certain lands which had been set out to and occupied by Mary French, as dower, and that when so set out, Silas Sutherland owned three undivided eighth parts, and Price Beardsley, the five undivided eighth parts of the same.

On the 2d day of May, 1839, Price Beardsley executed to John Chapman, as trustee for Joel French, a quit claim deed of all his right, title and interest, in the share of Martin French, in the dower of Mary French, and on the 28th of May, 1839, Sutherland conveyed, by a quit claim deed, all his right, title and interest in the piece of land set out to Martin French's share, not now in suit, to Califf Monroe. The exceptions say, that in the spring of 1839, Joel French went into the possession of the land sued for, and claimed the whole as his own, and the defendant it seems deduced title regularly from Chapman, who held the title in trust for Joel French, and the same has been constantly occupied under this claim of title, since Joel French entered in the spring of 1839, a period of more than fifteen years. The case states that Sutherland moved to the state of Illinois in 1839, and died there in 1840.

The defendant and those in his claim of title, have been in possession, claiming title a sufficient length of time to bar the title of

Sutherland, provided a sufficient foundation was laid for the commencement of an adverse possession against his title, more than fifteen years before the suit was commenced. The defendant claims that the deed from Price Beardsley to John Chapman, upon its face and by its terms, was such an assertion of title to the whole of this piece of land, as to be notice to Sutherland, the other tenant in common, when recorded, that the grantee in that deed claimed title to the *whole land*, and thus create such an *ouster* of Sutherland, and the commencement of an adverse holding against him, which, continued fifteen years, would bar his right. But it has never been considered that a conveyance by one joint tenant, or tenant in common, of all his interest in real estate, though the land is described in such a manner as to pass the whole under the deed, if the grantor had owned the whole, is notice of itself to the other joint owner of any such *exclusive* claim to the land, as to oust him of his legal seizin in the land. He has the right to suppose that by such a deed, both the grantor and the grantee understand it to convey the real interest the grantor owns in the land. But if this were otherwise, the exceptions show that after this conveyance from Beardsley to Chapman for Joel French, the parties recognized each other as joint owners, and had an arbitration as to the extent of their respective titles, which would be a good answer to any claim of an ouster by that deed.

The defendant claims too, that the entry and taking possession of the land in question, claiming title to the whole, by Joel French, in the spring of 1839, was an ouster of Sutherland, and that the statute then commenced running. This probably was an act which Sutherland might have elected to treat as an *ouster*, and have thereupon brought and maintained an action of ejectment, without other proof of any ouster, and without making any demand to be let into possession of his share. *Carpenter* v. *Thayer et al.* 15 Vt. 552. But we do not consider that this alone would be such an ouster as would bar a joint owner of his rights, unless he commenced his action within fifteen years thereafter. Another element is necessary in order to make it sufficient to found an adverse holding upon, and that is, notice of such exclusive and hostile claim, to the joint owner out of possession. When one joint owner is in possession of the whole, the legal presumption is, that he is keeping possession, not

Rogers, Adm'r. v. Morgan.

only for himself, but for his co-tenant, according to their several interests, and the other joint owner or owners, have the right to so understand, until they have notice to the contrary ; and the statute would only run from the time of such notice. We consider the principle substantially the same as between landlord and tenant as to converting a mere fiduciary possession into an adverse or hostile one.

It does not appear from the case that there was any such notice to Sutherland. The case does not say what time in 1839 he left the state, whether before or after the time French entered upon the land. If he remained in the vicinity after the possession and exclusive claim was taken and set up by French, it might be proper evidence to submit to a jury as tending to show notice to him of that fact. The defendant also claims, that from the conveyances in the case, and the manner in which possession was taken under them, by the respective parties, the county court ought to have found that there was a practical severance of this joint ownership, and that it was understood between Sutherland and Joel French, that French was to own the land sued for, as his in severalty, and that Sutherland's grantee was to be the sole owner of the other piece. But we think no such inference can be made *as matter of law*. It might very probably furnish evidence proper to be submitted to a jury tending to establish a division in fact, and so furnish a good commencement of an adverse possession. The question whether the defendant's possession was made adverse to Sutherland, either by notice that French had entered and *claimed the whole*, or that there had been a division in fact, and French was to have this piece, was wholly a question of fact, and as the county court rendered judgment for the plaintiff, we are to understand they found against the defendant, upon the evidence on these points and we cannot revise their judgment on any such question.

II. The defendant claims that the plaintiff cannot maintain the suit, for want of sufficient proof that he has *ousted* the plaintiff from his undivided interest in the land. If the entry of Joel French, claiming title to the whole was not a sufficient ouster (of which there seems no doubt), the subsequent conveyance of the whole by deed of warranty, from Joel French to Benjamin Morgan, the father of the defendant, and under whom the defendant

claims would seem to put the question at rest. See *Johnson* v. *Tilden*, 5 Vt. 426; *Pomeroy* v. *Mills*, 3 Vt. 410; *Carpenter* v. *Thayer*, 15 Vt. 552.

III. The defendant claims also, that his wife being a daughter and heir of Silas Sutherland, that he was entitled to hold possession of the premises and could not be evicted by the administrator. There is some confusion, if not conflict, in the cases, as to the right of an administrator over the real estate of the intestate, and his right to maintain actions to recover it.

By our law, the lands of deceased persons are holden for the payment of debts, if the personal estate is not sufficient for that purpose, and though the real estate descends directly to the heirs, it is in subordination to the legal right of the personal representative to dispose of it for the payment of the debts against the estate, and the heirs are not entitled to take and enjoy the lands until that purpose is answered, or it has been ascertained that the land is not needed for that purpose. The only power of the administrator over the real estate, is to hold the possession of it during the period of administration, and to dispose of so much as may be necessary for the payment of claims, and then it is to be assigned to the heirs by the probate court, and divided among them according to their respective interests.

To avoid any conflict between the administrator and heirs during this period, while it is uncertain whether the lands will be needed for the payment of debts, or will be left to be enjoyed by the heirs, it was provided by the probate act of 1821, sec. 63, (*see Slade's Comp. p.* 346,) that executors and administrators might maintain actions to recover possession of real estate, etc. belonging to the testator or intestate, and that "no such action shall be maintained by any heir or heirs, devisor or devisees, until such estate shall be set off to them by an order of the probate court."

But in the case of *Hubbard* v. *Ricart*, 3 Vt. 207, which arose soon after the passage of that act, it was held that the plaintiff, to whom all the heirs of Arad Hunt (who died in 1825, and had in his lifetime owned and possessed the land in question,) had conveyed their respective interests in the land the same year, might maintain an action of trespass against the defendant, for cutting timber on the land in 1827. The court in this case said, that even

after this short lapse of time, as the administrator of Hunt had not interfered to claim the land, and had taken no possession of it, they would presume the *lien* of the administrator was satisfied, and that as no division was necessary, as the plaintiff had the title of all the heirs, the plaintiff might maintain the action notwithstanding the statute.

In the case of *Abbott* v. *Pratt,* et al. 17 Vt. 626, the testator died in 1834, and by his will devised the lot of land in question in that case, and the devisee deeded to the plaintiff in 1841, who soon after brought the suit to recover the land of the defendant. The will had been proved in the probate court, but no other proceedings, and no assignment to the devisee. The court in that case said, they would presume the lien of the executor was satisfied, and as no division was necessary, the plaintiff might well maintain the action.

The case of *Buck, et al.* v. *Squires,* 22 Vt. 484, was also one where the heirs were permitted to sue, though there had never been any assignment by the probate court, or any division among the heirs.

The case of *Cushman, admr. of Upson,* v. *Jordan,* 13 Vt 597, is in principle more like the present. In that case, Upson, the intestate, died sixty years before the plaintiff took out letters of administration upon his estate, and left several heirs. The defendant, in 1832, obtained deeds from some of the heirs, and went into possession of the land. The other heirs assented to the granting of administration to the plaintiff, and the action was brought soon after the defendant took possession. It was held by the court that, though the defendant held the land as tenant in common with the other heirs, the administrator could not maintain the action to recover any part of the land. So in a case decided on the present circuit in Rutland county, *Cox* v. *Ingleston,*[*] where the intestate died thirty years before the granting of administration, and the land had been occupied by the heirs and their several grantees, but not divided, and on application of the administrator, the probate court ordered a partition of the land among the several owners of the land, it was held that the probate court had no jurisdiction to order partition made; that after so great a lapse of time, all claims

[*] See ante. page 258.

against the estate would be presumed to be barred, and all right of the administrator over the land extinguished.

Our present statute is far less restrictive of the right of the heir or devisee, than the act of 1821. See Comp. Stat. 341, sec. 11. That section provides " *When an executor or administrator shall be appointed and assume the trust of administering upon any estate,* no action, etc. shall be maintained by any heir or devisee, until there shall be a decree of the probate court assigning such lands to such heir or devisee, or the time allowed for paying debts shall have expired, unless the executor or administrator shall voluntarily surrender the possession to the heir or devisee."

Our statute makes no limitation as to the time within which the probate court may grant administration, but ordinarily, when for any reason an administration is necessary, it is granted immediately after the decease of the intestate, and especially when this becomes necessary to provide means for the payment of the debts of the deceased, and if the widow or next of kin do not take administration within a short period, any creditor may do so. Hence, under our present statute, if the administrator should not take possession of the real estate, but allow the same to go into the possession of the heir, or if no administration should be taken, and the heir remain in, or go into possession, and in either case any considerable period elapse beyond the ordinary time of administration, before an administrator should call upon the heir for the possession, it would probably be necessary for him to show that the land was needed for the payment of debts.

In the present case, Sutherland, the intestate, died in 1840, and the plaintiff took letters in 1856, a period of sixteen years.

It does not appear there was any evidence to show there are any claims now outstanding against the intestate, or any evidence there are any other heirs to his estate except the wife of the defendant. Under our statutes of limitation, there is no species of contract which is not barred by fifteen years lapse of time, and in analogy to our statute barring all rights *in the realty* by fifteen years adverse possession, the term of prescription and presumption in relation to incorporeal rights, mortgages, payments of debts, etc. all have been limited to that time as the extent.

In the absence of any evidence to the contrary, in this case the

legal presumption arises, from the facts reported in the exceptions, that there were no debts existing against Sutherland, which this land was necessary to satisfy, and therefore the administrator had no right to recall it out of the possession of the heir, when for aught that appears, it would go to her again by assignment, when recovered. Upon this last ground therefore, we think the defendant, on what appears to have been the evidence below, was entitled to judgment in his favor.

The case of *McFarland* v. *Stone*, 17 Vt. 165, where the administrator was allowed to maintain an action after a great lapse of time, and some cases which have followed that, if correctly decided, do not conflict with the views we now entertain. Those were cases where the defendant held under a title adverse to the title of the intestate, and hostile to both the administrator and the heirs, so that the question here presented did not arise.

The judgment of the county court is therefore reversed.