# STEPHEN W. RAWSON

*v.*

# ALBERT R. FOX *et al.*

1. LIMITATIONS—*what is color of title under act of* 1839. Where a mortgage given by two owners had been foreclosed in a proceeding in which a party holding an undivided half of the equity of redemption was not made a party, and the purchaser at the master's sale, after receiving the master's deed, made a deed to it which purported to convey the premises in fee: *Held*, that the latter deed was color of title under the limitation law of 1839.

2. It has been held, since the first cases decided under the act, that the claimant is not required to trace title through a chain to any source to constitute color of title. The case of *Irving* v. *Brownell*, 11 Ill. 412, announcing a different rule, was overruled by the case of *Woodward* v. *Blanchard*, 16 Ill. 424, and the rule here stated has since been followed.

3. So it has been held that where there was an ineffectual effort to obtain a strict foreclosure of a mortgage, but where the holder of the equity of redemption was not made a party, the mortgage and decree became color of title.

4. And it has been held that an assignment of shares of land among tenants in common in a proceeding for partition, where one of the co-tenants was not made a party to the decree, constituted color of title to each of the tenants for the share set off to him under the decree, and that such omission of parties will not overcome the presumption of good faith.

5. SAME—*good faith in party holding color of title.* The courts will not hold that the party claiming the benefit of the limitation under color of title, is chargeable with bad faith, because the registry of deeds or the judgment dockets may show a paramount outstanding title, or that the title of the claimant is defective, as that would be to render the statute practically inoperative.

6. The manifest object of the statute was to protect those who purchase land and pay their money therefor, under the belief that they are acquiring title. The fact that they paid for the land, have paid all taxes assessed against it for seven years, that they have taken possession, improved the same and controlled it as other owners generally act, affords evidence of their good faith.

7. SAME—*neglect to record deed does not raise a presumption of bad faith.* The failure of a party to record his deed, which is color of title, for a

Syllabus.

period of five years after its execution, will not be held to raise a presumption of bad faith to defeat the operation of the statute, as the statute itself has imposed no such condition.

8. SAME—*payment of taxes.* Where the color of title was in the wife, payment of taxes in the name of her husband may be shown by parol evidence to have been made for her, and under her color.

9. SAME—*former decision explained.* The case of *Fell* v. *Cessford,* 21 Ill. 522, announces in general terms that the holder of color of title must pay the taxes to come within the provision of the statute, but it does not say that the party may not act, in this respect, by an agent, the same as in other matters. Where the taxes are paid by an agent in his own name, it is competent to prove under this statute that the money was in fact paid for the owner, and under his color of title.

10. SAME—*evidence to defeat limitation.* Where the holder of an undivided half of a tract of land conveyed to his brother, who, with the owner of the other interest, mortgaged the same, and the wife of the first party afterwards acquired claim and color of title to the same land, by a deed from the purchaser, under a defective proceeding to foreclose the mortgage, and the wife, and those claiming under her, paid all taxes assessed thereon for seven successive years, while the land was vacant and unoccupied, the payment for the wife being made by her husband in his name, it was insisted that the court below should have admitted proof to show that the conveyance of the husband to his brother was set aside by a decree in chancery as being made to defraud creditors, and that therefore the husband was re-invested with title by the decree, and became a tenant in common with the holder of the other undivided half, and consequently payment of taxes by him could not be applied exclusively on account of his wife's color: *Held,* that the evidence was immaterial, as the decree did not operate to reinvest the husband with the title.

11. SAME—*prior agreement as affecting question of good faith.* Where two persons owning a tract of land mortgaged the same to A, the mortgagee agreeing by a stipulation in the mortgage to pay the taxes, and one of the mortgagors conveyed his equity of redemption to B, whose interest the complainant subsequently acquired, and it appears that A afterwards foreclosed his mortgage, but did not make the complainant a party; that the premises were sold under decree of foreclosure to C, who received a master's deed; that C then conveyed the premises to A, the mortgagee, who made a deed purporting to convey the title to D, who, together with those succeeding to his title, paid all the taxes assessed on the land for seven successive years, while the same was vacant and unoccupied; and that after the completion of such payment for the said term, the grantee of D took actual possession; and that B then, after the lapse of twelve years from the attempted foreclosure, filed his bill to redeem from the mortgage as to the undivided half of the premises, and contended that as the mortgagor had a right to rely upon the agreement of the mortgagee to pay the

taxes, those acquiring claim and color of title under the attempted foreclosure must take notice of the agreement to pay taxes, and could not set up their payment by them to defeat the right to redeem: *Held*, that the agreement imposed no duty on the purchasers to pay the taxes, and that the right to redeem was barred under the statute of 1839.

12. DEED—*delivery.* Where the grantor left his deed with the father of the grantee, and wrote to the latter that the deed was in his father's hands for him: *Held*, that this was a sufficient delivery to give the deed effect.

13. CANCELLATION OF DEED—*as a cloud upon title.* · Where on bill to redeem from a mortgage upon which a sale under foreclosure had been had, but which was defective for want of a necessary party to the proceeding, the defendant who claimed title under the sale, set up the statute of limitations in defense, and also filed a cross bill to have the deed conveying the equity of redemption under which the complainant based his right to file the original bill, set aside and canceled as a cloud upon his title, the proof showed that the complainant's right to redeem was barred under the act of 1839 by the payment of taxes for seven successive years on the land while the same was vacant and unoccupied, but failed to establish the particular ground upon which the complainant's title was sought to be set aside as a cloud: *Held*, that as all the parties in interest were before the court, and were seeking to have their titles tried and settled, it was proper for the court below to declare the complainant's title a cloud upon that of the defendant, as he was barred from asserting it, and enjoin its assertion, but not proper to require the complainant to convey his title to the holder of the adverse title.

14. FRAUDULENT CONVEYANCE—*effect of decree setting it aside.* Where a decree was entered setting aside a conveyance of land as having been made to defraud creditors of the grantor, it was held that it would be construed as only declaring the deed void, and setting it aside as to the creditors of the grantor, and that it still remained in force as between the parties; and that if the creditors were satisfied without a sale of the land, the decree was virtually wiped out, and thenceforward had no effect whatever upon the title claimed under such fraudulent deed.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. RICH & THOMAS, and Messrs. McCAGG, FULLER & CULVER, for the appellants.

Messrs. McDAID & WILSON for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant filed a bill in the Superior Court of Chicago, against appellees, to redeem from a mortgage and for partition of a tract of land. It is claimed that appellant is the owner of an undivided half of the land in controversy, and claims to derive title as follows: a patent from the general government to Isaac Cook, and a deed from him to Henry Patwin and Wm. M. Bowdoin; that Patwin conveyed to his brother Caleb, who, with Bowdoin, mortgaged the premises for $1700 to one George Winters; that Wm. M. Bowdoin conveyed his undivided half to Willard S. Bowdoin, who subsequently died, and appellant purchased of his sole heir and widow, thus becoming interested in the title to one half of the land. It is admitted that Fox is the owner of the other half, subject to incumbrances and equities held by the other appellees.

That after the sale to Willard, Winters foreclosed his mortgage, only making William M. Bowdoin and Caleb Patwin parties, and a decree was rendered against the entire tract, which was sold by the master, when one Daniels became the purchaser, and the premises not having been redeemed, on the 17th day of July, 1861, the master executed a deed to Daniels. It appears that Daniels, on the 11th day of October, 1861, conveyed the premises to Winters, and he, on the 2d day of December, 1861, conveyed to Mary E. Patwin, the wife of Henry Patwin, and that they conveyed the premises to appellee Fox on the 24th of October, 1867. The bill alleges that Fox, on the 15th of May, 1870, executed a trust deed to Henry O. McDaid on six acres of the land, to secure the payment of $10,000 due the Central City Savings Institution of New York, and that Horatio G. Spafford claims some right or interest in the land in controversy. It is further alleged that the premises had remained vacant and unoccupied until the 1st of October, 1871, at which time Fox enclosed the same with a fence.

Fox answered and denied that appellant was seized in fee of the premises, or that he had any legal or equitable title to the premises or any portion thereof. He admits that six acres of the tract were incumbered by a trust deed, as charged in the bill, and alleges that the incumbrance is *bona fide*; that Spafford is the equitable owner of one half of ten acres of the tract after the payment of purchase money, interest and taxes. He denies that complainant was, or ever had been, a tenant in common with him or Spafford.

He sets up his possession as charged, and that prior to that time the premises were vacant and unoccupied, and alleges that while the same were so vacant and unoccupied he and those from whom he derived title paid all taxes legally assessed upon the property for more than seven successive years, under claim and color of title to the land made in good faith. He sets up and insists on the statute of 1839 as a limitation and bar to the relief sought.

The Savings Institution answered, insisting that Fox was the owner of the land; that they held the incumbrance, and had made the loan and taken the trust deed without notice of any claim on the part of complainant. They also pleaded and relied upon the statute of limitations. Spafford answered, denying any ownership of complainant, and setting up his claim, and pleads the statute of limitations. McDaid answered, setting up his interest as trustee, and relies on the statute of limitations.

Fox and Spafford filed a cross bill, in which they allege that the deed from William M. to Willard S. Bowdoin was never delivered, and that complainant only claims title through that deed, and pray that it be decreed to be null and void. To the cross bill there was an answer, in which appellant re-asserts his title, and alleges that the deed was duly delivered. Replications were filed and a trial was had, when the original bill was dismissed for want of equity, and the relief prayed by the cross bill was granted, and the deed to Willard S. Bowdoin was held to be a cloud on the title of defendants. From

this decree complainant appeals to this court, and assigns various errors.

Under all the decisions of this court on the question, the deed to Mrs. Patwin was color of title. It purported on its face to convey the title to her. This fully answers the requirements of the statute as to color of title. It also appears that there was payment of taxes for the requisite statutory period on the land whilst it was vacant and unoccupied, which was afterwards followed by possession under the color of title, before the commencement of this suit. This establishes a complete bar under the statute, unless there was bad faith in acquiring and holding the color of title, or there was some irregularity in paying the taxes.

The mere fact that Patwin had previously held an interest in the land, but which he had conveyed, would not have prevented him from subsequently acquiring color of title in good faith. He was not a party to the suit for a foreclosure, and having previously conveyed his interest in the land, was no farther bound to take notice of the decree of foreclosure than any other person. And it has been repeatedly held that persons acquiring color of title are not required to examine the records, or be charged with notice of adverse titles or defects in their own. This, then, was no evidence to charge bad faith in Mrs. Patwin through her agent.

But it is urged that had the court below admitted the abstract of title offered in evidence, it would have appeared that the deed from Henry Patwin to his brother Caleb, and his deed to Thomas Patwin for Henry's undivided half of the premises, were decreed fraudulent, and set aside on a bill filed by creditors; that the decree was rendered in September, 1859, and that had this evidence been admitted it would have appeared that Henry Patwin became reinvested with the title to an undivided half of the premises by the decree, and, as a tenant in common, could not pay the taxes under and on account of his wife's color of title; that under such circumstances the taxes paid by him would be

206 RAWSON *v.* FOX *et al.* [Sept. T.,

Opinion of the Court.

·treated as a payment for himself and his co-tenant; and any attempt on his part to pay under the title held by his wife would be bad faith to his co-tenant, with which his wife must be charged.

In the view we take of this case, it is immaterial whether this evidence be considered as in or out of the record. Our statute of frauds only renders conveyances made to hinder and delay creditors and purchasers void as to persons thus defrauded. It leaves the conveyance perfectly valid and binding as to the parties to it. If the court did decree that these deeds were void, and ordered them to be set aside as to the creditors, and that they still remained in full force as between the parties to them, it does not appear that a sale was made under the decree, and the probabilities are that the money was paid to the creditors, and if the decree was thus satisfied, it thereby became virtually wiped out, and thenceforward had no effect. So, even on the evidence offered, it fails to appear that Henry Patwin had any, even the remotest, interest in the land whilst he was acting as the agent of his wife in the payment of taxes.

The question of good faith has been much discussed in this court, and we deem it unnecessary to review the cases or to enter upon an elaborate consideration of the question. All the cases proceed on the presumption that this statute was intended to have some practical operation. And to hold that a person is chargeable with bad faith because the register of deeds or the judgment docket may show a paramount outstanding title, or that the title of claimant is defective, would operate as an abrogation of the statute. If such were held to be the meaning of the statute, no one could act in good faith but a person having a perfect title, and such a title needs no protection from this or any other statute. The act was manifestly intended to protect those who purchase land and ·pay their money therefor, under the belief that they are acquiring title. And what better evidence of their good faith than the fact that they paid for the land, have paid all taxes

assessed against it for seven years; that they have taken possession, improved the same, and have controlled the property precisely as owners generally act with their lands.

It has been held, since the first cases decided under the act, that the claimant is not required to trace title through a claim to any source to constitute color. See *Woodward* v. *Blanchard*, 16 Ill. 424. It is true, that *Irving* v. *Brownell*, 11 Ill. 412, gave this statute a different construction, but that case was overruled by *Woodward* v. *Blanchard*, *Supra*, and the rule here announced was there adopted, and has been uniformly acted upon since that time.

It has been held that where there was an ineffectual effort to obtain a strict foreclosure, but where the holder of the equity of redemption was not made a party, the mortgage and decree became color of title. *Chickering* v. *Failes*, 26 Ill. 507. And a partition and assignment of shares of the land among tenants in common, even where one of the co-tenants was not a party to the decree, constituted color of title to each of the tenants for the share set off to him under the decree. *Hassett* v. *Ridgley*, 49 Ill. 200; *Hinckley* v. *Green*, 52 Ill. 223; and that such omissions of parties is not evidence that will overcome the presumption of good faith.

It is urged that the failure of Mrs. Patwin to record her deed from Winters for five years after its execution, was such evidence of bad faith as should prevent her from interposing the bar of the statute; and that she should not be permitted to avail herself of payment of taxes during that period. The statute has not imposed it as a condition that the color of title shall be recorded; and for us to require it would be adding to the requirements of the law. Her conduct in this regard is not so far out of the course adopted by land owners generally as to raise the presumption that there was an evil or fraudulent purpose in not recording the deed. And it was color whether or not it was recorded, and the evidence shows that the taxes were paid under it, and we think that these acts came within the letter and spirit of the statute.

Willard S. Bowdoin was bound to see that his taxes were paid. The foreclosure of the mortgage occurred in 1859, and the sale under it was in April, 1860, and this suit was not brought until the latter part of February, 1872, nearly twelve years after the sale. Unless exceedingly indifferent to their rights, he, or those claiming under him, must have known of the decree and sale, and certainly knew that taxes were being levied on the land, and that they were not paying them. It was within their power with slight effort to have learned that Winters had foreclosed the mortgage, and from that time forward Willard had no right to suppose Winter was treating the mortgage as still subsisting. The foreclosure, however irregular, was hostile in its character to the rights of the mortgagors and all persons claiming under them.

It is likewise urged that Mrs. Patwin can not avail herself of the payment of taxes on this land which was made in the name of her husband, although the evidence shows that they were paid for her and under her color of title; and the case of *Fell* v. *Cessford*, 26 Ill. 522, is referred to in support of the position. The general proposition is thus announced that the holder of color must pay the taxes, to be within the provisions of the statute, but it is not said that a party may not act by an agent in that as in other matters. In the case of *Cofield* v. *Furry*, 19 Ill. 183, it was held to be immaterial whether the taxes were paid by the *trustee* or the *cestui que trust*, the landlord or the tenant, so they were paid in subserviency to the claim and color of title; and the same rule was announced in *Lyon* v. *Kain*, 47 Ill. 200, and other cases might be referred to announcing the same rule.

The case of *Hinchman* v. *Whetstone*, 23 Ill. 185, which has been followed by other decisions of this court, holds that the payment of taxes under claim and color of title may be proved by verbal testimony. The grounds for these decisions were stated, and we have no inclination to repeat them. According to these decisions it was entirely competent for Mrs. Patwin to prove by parol that the taxes were paid under

and for the protection of her color of title; and it has been held that where taxes have been paid by and in the name of an agent, it was competent to prove that the money was in fact paid for the owner of, and under his color of title. *Rand* v. *Scofield*, 43 Ill. 167. It was, then, competent to prove that although the receipts were taken in the name of Henry Patwin, the payment was in fact made for his wife as the holder of the claim and color of title.

When Fox purchased he had the right to run the risk of proving that the taxes were paid for Mrs. Patwin, although in the name of her husband. He has shown they were so paid, and when coupled with those paid by himself after he purchased, we see that all taxes legally assessed for seven successive years were paid; and that claim of color of title in good faith, payment of taxes for the requisite statutory period on vacant and unoccupied land concurred for full seven years, and that this was followed by actual possession of the property after such payment of taxes and before the commencement of this suit.

It was also urged that Winters agreed by a stipulation in the mortgage to pay all taxes on the land, and that Willard S. Bowdoin had a right to rely upon that agreement. The contract was between Winter and Willard's grantor, and even if he succeeded to the benefit of the agreement by the conveyance to him, still we are at a loss to perceive how that could impose any duty either legal or moral on Henry Patwin to pay the taxes for Willard S. Bowdoin. Henry was not a party to the mortgage and had previous to that time parted with his title to the land. And we have seen that Mrs. Patwin was not required to trace the title back to its source to determine whether it was defective, or that previous owners had incumbered it with covenants, liens or other burthens.

Winters, her grantor, held a deed that was color of title, and if she was even required to examine that, she could not from it have learned that Winters was under any obligation to pay

14—65TH ILL.

210      Rawson v. Fox *et al.*      [Sept. T.,

Dissenting opinion of Mr. Justice Sheldon.

the taxes. To have learned that, she would have been compelled to go through the master's deed to Daniels, the decree and back to the mortgage. But we have seen she was not required to make this search.

It is urged that the court below erred in granting the relief sought under the cross-bill. The proof shows that the deed from William M. to Willard S. Bowdoin, was delivered so as to become operative as a conveyance. The grantor wrote to the grantee that the deed was in their father's hands for him. This has always been held to be a sufficient delivery. When thus placed in the father's hands, subject to the control of Willard, without any conditions or restrictions, it passed from the control of the grantor and was under that of the grantee. The rule is familiar that where a grantor places the deed in the hands of a stranger for the grantee, and no restrictions are imposed on its delivery, such an act is sufficient to give the deed full effect.

Notwithstanding the deed was properly delivered and passed the title of William M. to Willard S. Bowdoin, subject to the mortgage, still the statute has barred those claiming through Willard from asserting that title; and as appellant filed the bill and brought all the other parties into court, claiming the undivided half of the land against the claims of the other parties, and to have their titles tried and their rights settled, the court, by the original and cross bills, acquired jurisdiction over the whole matter, and it being shown that appellant's title was barred, it was proper that the court below should declare his title a cloud on that of appellees, and order it to be canceled, and that appellant should be enjoined from its assertion. The decree is so far modified as not to require that title to be conveyed to appellees; and the decree in other respects, is affirmed.

*Decree affirmed.*

Mr. Justice Sheldon, dissenting: I do not agree with so much of the opinion of the majority of the court as seems

to countenance the idea that a mortgagee or tenant in common can, under the statute of limitations, gain the title of his mortgagor or co-tenant by obtaining the deed of the land under a void proceeding, without notice, for foreclosure or in partition, and the payment of taxes for seven years.

The deed might be color of title, as this court has heretofore decided. But in addition to color of title there must be good faith; and I understand that it is not actual bad faith that is required in order to defeat the operation of the statute, but that bad faith in law will have that effect; and, as I regard it, there is bad faith in law in acquiring title in such manner, unless notice of the hostile proceeding had been brought home to the mortgagor or co-tenant. Such a void proceeding as above supposed would not sever the relation of mortgagor and mortgagee, or that of tenants in common; and while such relation subsists there must not only be the assertion of an adverse right, but it must be brought home to the other party, before any foundation can be laid for the operation of the statute. And knowledge of the hostile attitude is not to be presumed, but it must be shown by proof, so as to preclude all doubt of the want of knowledge on the part of the owner. This appears to be the plain rule of law in cases where such a privity exists between parties. *Roberts* v. *Morgan*, 30 Verm. 319; *Holley* v. *Hawley*, 39 id. 525; *Zeller's Lessee* v. *Eckert et al.* 4 How. 289; 3 Washb. Real Prop. 128.

And it seems to have been recognized by this court in *Hinckley* v. *Green*, 52 Ill. p. 232, in the opinion on refusal of a rehearing, where the necessity of notice in such case, to the co-tenant, of the adverse claim, and payment of taxes, is recognized.

Neither do I accede to the view that a purchaser of land is not bound to take notice of prior conveyances of record which are links in his chain of title.

Of such conveyances, I think he is presumed to have notice. It was only through the Winters mortgage that any interest in the land in Winters could be deduced.