| 89 | 183 |
|-----|-----|
| 121 | 439 |
| 89 | 183 |
| 127 | 91 |
| 89 | 183 |
| 128 | 44 |
| 89 | 183 |
| 146 | 86 |
| 89 | 183 |
| 148 | 275 |
| 89 | 183 |
| 152 | 121 |
| 153 | 335 |
| 89 | 183 |
| 156 | 74 |
| 89 | 183 |
| 167 | 153 |
| 89 | 183 |
| 186 | 8242 |
| 89 | 183 |
| 187 | 9304 |
| 89 | 183 |
| 189 | 9 69 |
| 89 | 183 |
| 195 | 8208 |
| 89 | 183 |
| 204 | 9453 |
| 89 | 183 |
| 114a | 3489 |

# WILLIAM T. COLEMAN

### v.

# ELIZABETH S. BILLINGS et al.

1. ACKNOWLEDGMENT—*certificate under act of* 1819. While the act of 1819 requires the officer taking the acknowledgment of deeds to examine the wife separate and apart from her husband, and to read or otherwise make known to her the full contents of the conveyance, and that she should declare that she voluntarily, and of her own free will and accord, sealed as her act and deed, and delivered the same, without any compulsion or coercion of her husband, it does not require that the officer taking the acknowledgment shall affirmatively show these facts in his certificate. It simply requires him to certify the acknowledgment, under his hand and seal, upon the back of the conveyance.

2. Under the act of 1819 the officer taking the acknowledgment of a deed of a married woman is not required to show anything more than the declaration or acknowledgment of the wife that she had voluntarily executed the deed. The rule was changed by subsequent statutes.

3. CONTRACT—*champertous.* An agreement whereby one agrees, at his own cost and expense, to recover and reinvest a claimant with the possession of land adversely occupied, and the claimant, in consideration thereof, undertakes, when that shall be done, to convey, by quitclaim, two-thirds of his interest to the other, is champertous and void, and such other person is not a necessary party to a suit by the claimant for partition of the land.

4. POSSESSION—*of part under deed extends to whole tract conveyed.* A party who enters into possession of land under a conveyance, though from a person having no title, is presumed to have entered according to the description in the deed, and his occupancy of a part, claiming the whole, is construed as a possession of the entire tract, where there is no actual adverse possession of the part not so occupied by him.

5. SAME—*actual residence not necessary.* Actual residence, either by the party claiming land or by a tenant, is not indispensable to continued possession or occupancy. If there is continuous dominion manifested by continuous acts of ownership, it is sufficient.

6. LIMITATION—*proof of payment of taxes.* Where payment of taxes on land was proved for seven successive years, under color of title, before suit was brought, by the production of the tax receipts, except for two intermediate years, and the collector's books were given in evidence showing that the lands were assessed for those years in the name of the defendant's husband, who devised the same to the defendant, and that the taxes were marked paid, and the defendant, the devisee, testified that her husband always paid the

taxes on the land from the time he purchased the same, which was before the date of any of the prior receipts, until his death, and that the taxes were all paid since her husband's purchase, the receipts for those two years being lost, it was *held*, that this evidence was competent to prove the payment of the taxes for the seven years, and satisfactory proof of the fact of their payment.

7. SAME—*color of title.* Where a tax deed for land is relied on, the judgment and precept for the year of the sale, as recited in the deed, showing there was no judgment rendered against the land, are competent to show that no title passed by such deed, but are not sufficient to show the deed did not constitute color of title, or a want of good faith in obtaining the title.

8. The ruling of this court is, that a deed, to constitute color of title, must apparently transfer title to the holder, not that the title should purport, when traced back to its source, to be an apparently legal title; but the instrument relied upon must profess to convey a title to the grantee.

9. SAME—*good faith.* Bad faith, as contradistinguished from good faith, in the Limitation act of 1839, is not established by showing actual notice of existing liens or claims of others to the property, or by showing a knowledge on the part of the holder of the color of title of legal defects which prevent the color of title from being an absolute one. Where there is no actual fraud, and no proof showing the color of title was acquired by fraud, it will be held to have been acquired in good faith.

10. SAME—*payment of taxes.* Where tax receipts, produced in evidence by one claiming land under color of title, show a payment of the taxes for a part of the seven years by the holder of the color of title and another person, this will not constitute a bar, under the Limitation law of 1839, as to the whole tract, but a bar only as to the undivided half; but in such case it is competent to show that the taxes were in fact paid by the holder of the color of title, and that the name of the other person was by some inadvertence included in the receipts.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a bill in chancery, filed by William T. Coleman against Elizabeth S. Billings, Lewis B. Parsons, Catharine W. Gronau, John Gronau and Amos Atkins, for the partition of a half section of land, being the south half of section 25, township 3 north, range 9 west.

The certificate of the acknowledgment of the deed of Joseph Worley, and Elizabeth Worley, his wife, referred to in the opinion, is as follows:

" STATE OF ILLINOIS, ⎫
    *Monroe County.* ⎭ *ss.*

"Personally present the above named Joseph Worley, and Elizabeth, his wife, before me, a justice of the peace in and for said county, and acknowledged their respective signatures to the foregoing instrument of writing to be their voluntary acts and deeds, for the purposes therein contained, the said Elizabeth, wife of said Joseph Worley, being by me, the said justice of the peace, before whom the above acknowledgment was made, examined separate and apart from her said husband, so as done without compulsion or coercion on his part, and accordingly may be recorded.

"In testimony whereof I have hereunto set my hand and seal, this 19th day of September, A. D. 1826.

SAMUEL BAILEY, J. P."   [seal]

Messrs. GILLESPIE & HAPPY, for the appellant.

Mr. CHARLES P. WISE, for the appellee E. S. Billings.

Messrs. IRWIN & KROME, for the appellees C. and John Gronau.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This appeal brings before us for review the record of a proceeding, by bill in chancery, for partition, in behalf of appellant and against appellees. The decree, on final hearing, was, that the bill be dismissed.

Appellant claims title to the undivided four-fifths of the tract of land in controversy, derived through a series of *mesne* conveyances from John Beard, the original patentee, who died intestate many years since. On the hearing he offered in evidence a deed for an undivided one-fifth of the tract, from Elizabeth Worley, one of the children and heirs at law of the said John Beard, to William A. Beard, a remote grantor of appellant. Joseph Worley, the husband of Elizabeth,

joined with her in the execution of the deed, and it was acknowledged before a justice of the peace of Monroe county on the 19th of September, 1826. On objection by appellees' counsel, the court refused to receive the deed in evidence, upon the ground that the certificate of acknowledgment was insufficient to pass the estate of a married woman.

The objections taken to the certificate of acknowledgment are, it does not state that the justice of the peace read or otherwise made known the full contents of the deed to the wife; it does not state that the wife, " on separate examination, declared that she did voluntarily, and of her own free will and accord, seal and deliver said deed without any compulsion or coercion of her said husband."

The statute in force in reference to the acknowledgment of deeds, etc., when this deed was executed, was the act of February 19, 1819. That act required the officer taking the acknowledgment to examine the wife separate and apart from her husband, and to read or otherwise make known the full contents of such deed or conveyance to the wife, and that she should declare that she did voluntarily, and of her own free will and accord, seal, and as her act and deed deliver, the said deed or conveyance, without any compulsion or coercion of her husband, etc., but it did not require that the officer taking the acknowledgment should affirmatively show these facts in his certificate. It simply required that he should certify the acknowledgment, under his hand and seal, " upon the back of such conveyance." Laws of 1819, p. 21, 22, sec. 11.

So far as affects the present question, the act of 1819 is a literal transcript of " a law establishing the recorder's office, and for other purposes," of the Indiana territory, adopted September 17, 1807. See Purple's Real Estate Statutes, p. 462. And the Supreme Court of Indiana, in *Stevens* v. *Doe*, 6 Blackford, 475, under a like objection to that now urged, held that the statute did not require the officer taking the acknowledgment to show anything more than the declaration or acknowledgment of the wife that she had voluntarily executed the

deed, observing: "It will be presumed, the contrary not appearing, that the officer did his duty as to the separate examination of the wife, and the making her acquainted with the contents of the deed. It is the acknowledgment only, not the circumstances under which it was made, that is required to be certified." This case is referred to with approval, in argument, in *Hughes et al.* v. *Lane*, 11 Ill. 123. And in *Russell* v. *Admrs. of Whiteside*, 4 Scam. 7, the same act received a like construction by this court.

We think the certificate of acknowledgment sufficiently complies with the statute in force when it was made, and, consequently, that the deed was improperly excluded as evidence. The statute applicable in *Garrett et al.* v. *Moss et al.* 22 Ill. 364, and other cases cited by appellees' counsel on this point, was entirely different from the act of 1819 in its phraseology. It expressly required that the facts should be set forth in the certificate of acknowledgment. See Revised Laws of 1833, p. 134, § 13; Revised Laws of 1845, title "Conveyances," § 17.

Appellees, on the hearing, gave in evidence an agreement in writing between appellant and one William E. Wheeler, dated March 5, 1872, whereby Wheeler undertakes, at his own cost and expense, to recover and reinvest appellant with the possession of the property in controversy, and appellant, in consideration thereof, undertakes, when that shall be done, to convey, by quitclaim, to Wheeler, two-thirds of his interest in the property, and the point is made that the decree of the court below may be sustained solely on the ground that Wheeler was not made a party to the bill. We do not coincide with this view. Wheeler had no present interest in the property to be affected by the decree. The agreement was champertous and void. *Thompson et al.* v. *Reynolds*, 73 Ill. 11. And it only purported to bind appellant to give him an interest in the property, upon the successful prosecution of this or like litigation for the recovery of the property.

The main controversy, however, is in regard to the character and strength of the titles under which appellees claim, and to this we shall now, briefly, direct our attention.

The appellee Elizabeth Billings is widow and executrix and sole devisee of Henry W. Billings, deceased. The appellee Catharine M. Gronau was widow and is sole devisee of Henry Miller, deceased. The latter claims 112 acres of the tract of land in controversy, which is particularly described in the pleadings, by virtue of a deed from Henry W. Billings and Lewis B. Parsons to her former husband and devisor, Henry Miller, executed on the 11th day of January, 1864. This deed she claims as color of title, made in good faith, and relies upon actual possession of the premises and the payment of taxes for seven successive years thereunder, as a bar to the claim of appellant. That the deed from Billings and Parsons to Miller was made in good faith, is not contested; but it is objected that there was neither an actual continuous occupancy of the premises, nor the payment of taxes for seven successive years, in subordination to the claim under that deed. We do not think the evidence before us sustains either of these objections.

A party who enters into possession of land under a conveyance, though from a person having no title, is presumed to enter according to the description in the deed, and his occupancy of a part, claiming the whole, is construed as a possession of the entire tract. *Davis* v. *Easley,* 13 Ill. 192; *Brooks* v. *Bruyn,* 18 id. 539; *Prettyman* v. *Wilkey,* 19 id. 241; *Barger* v. *Hobbs,* 67 id. 597; *Austin et al.* v. *Rust,* 73 id. 491.

There is no proof of an actual adverse possession to Miller, after his purchase. Peter J. C. Marion testified that Miller had possession of the part he purchased from the time he purchased until the time of his death, and thinks his widow has had possession since. Daniel Collins testifies that the land was occupied by one Howard, who is elsewhere shown to have been a tenant to Billings when Miller purchased the land; that Miller then went into possession of the land and occu-

pied it until his death, and that it has since been in the possession of his widow.

Without referring to other evidence, of which there is considerable to the same effect, this, being uncontradicted, is sufficient. It is true, the appellee Elizabeth Gronau testifies, that there were some periods of time when no one claiming under Miller or herself was actually residing upon the land; but actual residence, either by the party claiming or a tenant, is not indispensable to continue possession or occupancy. If there is continuous dominion manifested by continuous acts of ownership, it is sufficient. See *Kerr* v. *Hitt*, 75 Ill. 51.

It is shown a small portion of the land was reduced to a state of cultivation and a dwelling house was upon it when Miller purchased. He continued, during his lifetime, to enlarge the area in cultivation and add to the improvements, and the same has been continued by his devisee since his death, and there is no evidence tending to show that possession has ever been abandoned by Miller or by his devisee.

Payment of taxes was proved by the production of the receipts for the years 1864, 1865, 1868, 1869, 1870, 1871, 1872, 1873, 1874 and 1875, by Miller and his devisee. For the years 1866 and 1867 no tax receipts were produced, but the collector's books were given in evidence showing that the land was assessed for those years as the property of Henry Miller, and that the taxes were marked paid. And the devisee Catharine M. Gronau testified, that Miller always paid the taxes on the land from the time he purchased until his death; that after his death she paid them, and that "they have been paid for every year since Miller's purchase; the tax receipts for the years 1866 and 1867 have been lost."

This evidence was unquestionably competent to prove the payment of taxes, (*Elston et al.* v. *Kennicott et al.* 46 Ill. 187,) and it is satisfactory as to the fact they were paid.

It results that, in our opinion, there was no error in the decree in respect of the one hundred and twelve acres claimed by the appellee Catharine M. Gronau.

As to the residue of the tract, the appellee Elizabeth Billings also relies upon color of title, obtained in good faith, and the payment of taxes thereunder for seven successive years, as a bar to the claim of appellant, under the Limitation act of 1839. The title claimed as colorable consists of a sheriff's deed to her devisor, Henry W. Billings, executed October 10, 1860, pursuant to a sale for the taxes assessed against the tract for the year 1857, had on the 9th of August, 1858. Appellant offered in evidence the judgment and precept under which the sale was made, for the purpose of showing that no judgment had, in fact, been obtained against the tract.

This evidence was competent for the purpose of showing that the deed did not convey an absolute title to the tract, but we do not think it was sufficient to show that the deed did not constitute color of title.

The ruling of this court is, that a deed, to constitute color of title, must apparently transfer title to the holder. Not that the title should purport, when traced back to its source, to be an apparently legal title, but the instrument relied upon must profess to convey a title to the grantee. *Bride* v. *Watt et al.* 23 Ill. 507; *Kruse* v. *Wilson,* 79 id. 240. And upon this principle it was held, in *Mason et al.* v. *Ayers et al.* 73 Ill. 121, that where a mortgagee attempts to foreclose his mortgage and obtains a deed under a decree of foreclosure, the deed constitutes color of title, although the decree of foreclosure may be erroneous or even void, provided there is no fraud connected with the attempted foreclosure. Such also was the ruling in *Rawson* v. *Fox et al.* 65 Ill. 200, where the holder of the equity of redemption was not a party to the decree of foreclosure, and it was held that a deed to the purchaser at the sale under the decree, was color of title. And in *Whitney* v. *Stevens,* 77 Ill. 585, it was held that a deed under a tax sale, although defective and conveying no absolute title, yet being fair upon its face, and purporting to convey title, was color of title. Nor was this evidence sufficient to show want of good faith in obtaining the title. " The doctrine is, that bad faith, as con-

tradistinguished from good faith, in the Limitation act, is not established by showing actual notice of existing claims or liens of other persons to the property, or by showing a knowledge on the part of the holder of the color of title of legal defects which prevent the color of title from being an absolute one. Where there is no actual fraud, and no proof showing that the color of title was acquired in bad faith, which means in or by fraud, this court will hold it was acquired in good faith." *McCagg et al.* v. *Heacock et al.* 42 Ill. 157; *Rawson* v. *Fox, supra; McCagg et al.* v. *Heacock et al.* 34 id. 476; *Russell* v. *Mandell,* 73 id. 136.

The deed from the sheriff to Billings purports to convey title to Billings—it is fair upon its face and discloses nothing to render it void. It sufficiently showed color of title, whatever may have been the actual condition of the record relating to the judgment and sale pursuant to which it purports to have been executed.

But the point is made, and argued with much earnestness, that Billings was, at the time of the tax sale under which his deed was obtained, a co-tenant of the tract in controversy with Parsons, and with those under whom appellant claims title. It is said Billings was, at that time, in possession of the property as co-tenant—he and Parsons having obtained, by deed from one Mary Gleeson, the undivided one-fifth of the tract, and that consequently he could not, in good faith, take title to himself in the whole tract by virtue of a purchase at a tax sale.

We have, in vain, looked through this record for evidence that Billings ever was in possession of this tract, claiming to be a co-tenant thereof with others—and especially with those under whom appellant claims. The only possession of which we have discovered evidence, was exclusive and in hostility to those under whom appellant claims, and we have discovered no evidence of a legal title in him and Parsons to an undivided interest in the tract. The deed of Mary Gleeson simply conveys "all her right, title and interest in and to all lands

belonging to her, or in which she has any interest, in the county of Madison, and State of Illinois." There is no deed in evidence conveying to her any interest in this tract, and there is no proof that she derived such an interest by descent or devise from any one in whom an interest is shown.

It is, therefore, wholly unnecessary to consider the legal question arising on the assumption of Billings co-tenancy.

Thus far we are of opinion the case is with the appellee Elizabeth Billings, but no farther. The evidence fails to show payment of taxes for seven successive years by Billings. The proof shows payment of taxes for the years 1858, 1859, 1860 and 1861 by Billings, but that the taxes for 1862, 1863, 1864, 1865, 1866 and 1867 were paid by Billings and Parsons. It would have been competent to have proved, if such was the fact, that the taxes were in fact paid by Billings, and that the name of Parsons was, by some inadvertence, included in the receipt, (*Rawson* v. *Fox, supra, Hinchman* v. *Whetstone,* 23 Ill. 185,) but no such evidence was introduced, and the presumption from the receipts, unexplained, is that the taxes were paid as there shown. As was said in *Dawley* v. *Van Court,* 21 Ill. 463, "Then there was　＊　＊　＊　a payment of one-half the taxes assessed, by a person not having color of title to the land, while the other half of the taxes was paid by the holder of such color." And we must hold here, as there, that Mrs. Billings can only rely upon the bar of the statute, under this evidence, to the extent of the undivided one-half of the property.

For the reasons given, so much of the decree below as relates to the property claimed by the appellee Catharine M. Gronau, is affirmed, and so much as relates to the residue of the property is reversed and the cause remanded.

*Decree affirmed in part, and in part reversed.*