James R. W. Hinchman, Appellant, *v.* John Whetstone, Appellee.

APPEAL FROM ADAMS.

Proof of payment of taxes may be made otherwise than by the production of the receipts.

Although the taxes upon land may not have been paid within each year for seven successive years, yet if they were paid in one year for another of the seven, the party still being in possession under claim and color of title, the requirements of the statute of limitations, which took effect in 1839, will have been complied with.

Where a party has been in possession, under the first section of the limitation act of 1839, a sufficient length of time to present a bar to the owner, the latter cannot use his title either for defense or recovery, until he shall have destroyed the bar, by purchase or some other mode.

It seems a right to land acquired by limitation is affirmative, and may be enforced.

A court will not interfere to reduce damages in actions of tort, unless the finding is oppressive.

The facts of this case are fully stated in the opinion of Mr. Justice Walker.

The cause was tried at the October term, 1856, of the Adams Circuit Court, before SIBLEY, Judge, and a jury. The damages were assessed at one hundred and twenty dollars, and judgment was rendered accordingly.

G. EDMUNDS, J. GRIMSHAW, and BENNESON & MARSH, for Appellant.

BROWNING & BUSHNELL, and WHEAT & GROVER, for Appellee.

WALKER, J. This was an action of trespass *quare clausum fregit,* commenced in the Adams Circuit Court, by Whetstone against Hinchman and John Loomis, and was tried by the court and a jury, at the October term, 1856. The declaration was for breaking and entering a lot of ten acres of ground in the limits of the city of Quincy, being a part of S. E. 35, 1 S., 9 W. The defendants plead the general issue; title in Loomis; title to an undivided half in Loomis; title in defendants; and, title to an undivided half in defendants. On each of these pleas, there was an issue to the country. It was admitted on the trial, that the title to these premises, on the 26th day of December, 1834, was in David R. and Nathaniel Griggs. Appellee introduced a deed of that date from the Griggs, executed by David R. in person, and by him as Nathaniel Griggs' attorney, in fact, to Adam Nichols, and deduced title by regular chain of conveyance from Nichols to himself. He also read in evidence receipts for the tax due the State for the years 1841, '45, '46, '51, '52, '53, and 1855, and for city tax, for the years 1842 and 1849; and for State and city tax, for 1848 and 1856. He then called a witness, who testified that he had acted as the agent of appellee, and as such, and for him, had paid all taxes on the land for each year, from 1839 to 1855, inclusive, except the city tax for the year 1846, for which the land was sold. The evidence also shows, that a portion of this tract of land was enclosed, and cultivated by appellee from the year 1837 till 1852, at which latter period, a street of the city was extended and opened through the inclosure, and a deep excavation, for the track of a railroad, was made through another portion of it, and the fences thus broken were not repaired before April, 1856. The evidence likewise shows that Hinchman, on the 13th day of March, 1856, purchased, and received from Nathaniel Griggs, a deed of conveyance, for the premises in question. And that, on the fifth day of April, 1856, appellee set some posts, and planked them into a pen sixteen feet square, on this piece of land, at which time, appellant had upon one corner of the same some timbers suitable for the erection

of a house, and had dug a few holes suitable for setting fence posts. When appellee made the pen, no other person was at work on the land. Soon afterwards he constructed a house on the premises, near the same place, and put into it a tenant. Appellant proceeded to fence the land, and to build a house upon it, and, also, placed a tenant in it. On this evidence, the jury found a verdict for the appellee for the sum of $120 damages. Defendants below entered a motion for a new trial, which the court overruled, and rendered judgment against them, from which, Hinchman appeals to this court.

Appellant urges the reversal of this judgment upon the grounds that appellee had not such claim and color of title, which, when coupled with possession and payment of taxes for seven successive years, would, under the first section of the limitation law of 1839, constitute a bar. It is not disputed that appellee owned an undivided half of the premises in fee simple; and the deed to him, purported to convey to him the title to the whole tract. This court has already held, in the case of *Gowry* v. *Urig*, 18 Ill. R. 242, that a person purchasing in good faith need not trace his title to its source, to see if the title is apparently perfect, and free from defects, and that such a deed from a tenant in common, who was only the owner of one-fourth of the title, was claim and color of title. This court has also held, that good faith will be presumed, unless it is rebutted by evidence of bad faith. And in this case there is no such proof. This court has likewise held, that an actual possession of a portion of a tract of land, under claim and color of title, extends the occupancy to the boundaries of the land embraced in the claim and color of title.

In this case it is not controverted that appellee had the actual possession of a portion of these premises, by enclosure and cultivation, from 1837 till in 1852. He also introduced several tax receipts, and proved by a witness, who was his agent, the payment of all the taxes for each year, from 1839 to 1855, inclusive, except the city taxes for the year 1846. But it is insisted that it is not competent to prove the payment of taxes by parol, or in any other mode than by the production of the collector's receipts. Philips, in his work on Evidence, vol. 2, p. 220, lays down the doctrine, "That to prove the plaintiff's demand satisfied, the defendant may give in evidence an admission by the plaintiff to that effect, though it should appear that the plaintiff signed a receipt, and it may be said the receipt would be the more satisfactory proof." It is believed that the decisions are uniform, both in this country and in Great Britain, that payment of money may be proved by oral testimony, notwithstanding a receipt was taken, and this, too, without account-

ing for the absence of the receipt. Such evidence is received as independent proof of the fact of payment, and not for the purpose of establishing the contents of the receipt; and where such evidence is clear, positive, and free from suspicion, it is satisfactory to establish the payment. Receipts, unless coupled with a contract, are only *prima facie* evidence, and may be rebutted or explained by oral testimony. These receipts for taxes are not given under the sanction of an oath, and might as readily be prepared for the occasion, as to procure false testimony. Nor does the statute provide any mode of proving the payment, but leaves the proof to be made in any legitimate mode. The requirement of the statute would be as fully answered without as with a receipt. It forms no part of the payment, but is only evidence of the fact. No reason is perceived why the payment of taxes. may not be proved, in a case of this character, by the verbal evidence of a witness, as well as the payment of money in any other case.

It was also urged that the taxes which were legally assessed on this land, were not paid seven successive years, by appellee, while he was in possession. This act of limitation was adopted by the legislature, and took effect on the second day of March, 1839, and as the appellee was then in possession, it began to run from that date, and the full period of the time limited expired at the end of seven years from that time. And we have seen that all the taxes on the land, except the city tax for the year 1846, were paid from 1839 to those assessed for the year 1846, without any interruption, which embraced a period of seven full consecutive years. And it can make no difference whether the taxes for the year 1845 were paid within that, or the succeeding year, as he was still in the occupancy, and made the payment under his claim and color of title. In either event it completed the payment of taxes for the period of limitation, and answers fully the requirements of this section of the statute. There was, then, actual possession, under claim and color of title, made in good faith, connected with payment of all taxes, legally assessed upon the land, for the full period of limitation, and the bar to a recovery, by the former owner, was then complete and availing, and the appellee, as such occupant, became entitled to, and possessed of, all the rights which the statute can confer. The question is then presented, what rights appellee acquired by the bar, under the first section of the act of 1839. The effect and legal operation of the bar, under this section, when the person who had acquired it is out of possession, and institutes an action against the owner of the paper title, is for the first time presented for determination by this court. That it conferred the exclusive right upon him to occu-

py and enjoy the premises, as if he were the owner of the paramount title, will not be controverted. And that it also gave to him the undoubted right to invoke the aid of the law to protect him in that possession against all intrusion into, or trespass upon, the premises, by whomsoever made, precisely as if he were the owner of the paramount title, is equally well settled.

And it has been uniformly held, that after the occupant has acquired the benefit of the bar, which a statute of limitations confers, he may recover the possession and also for injuries committed on the premises, as against a stranger, by simply proving his occupancy for the period of limitation. This is the effect of all limitation laws, and it has been so repeatedly held, that it is deemed unnecessary to quote authority in support of the proposition.

And the decisions of many courts, whose opinions are entitled to high consideration, have gone much farther, and have held that when the bar of the statute of limitations has become complete, that it invests or transfers to the occupant paramount title, while others only hold that it confers upon him' title. *Johnson* v. *Lancaster*, 5 Geo. 39; *Moody* v. *Fleming*, 4 Geo. R. 115; *Middleton* v. *Dupuis*, 2 Nott. & McCord, 310; *Wilson* v. *Kilcannon*, 4 Hayw. Tenn. 182; *South School District* v. *Blakeslee*, 13 Conn. 227; *Church* v. *Accadamy*, 2 Hawks N. C. R. 233; *Pace* v. *Statton*, 4 Iredell, 32; *Baker* v. *McDonald*, 2 Jones N. C. R. 244; *Whitesides* v. *Singleton*, 1 Meigs, 207; *Stewart* v. *Harris*, 2 Swan's Tenn. R. 656; *Pedrick* v. *Searle*, 16 Serg. & Rawle, 236; *Mitchell* v. *Walker*, 2 Aik. 266; *Gage* v. *Gage*, 10 Foster, 420; *Riddle* v. *Mellan*, 13 Mo. 335; *Smart* v. *Baugh*, 3 J. J. Marsh. 368; *Skyles* v. *King*, 2 Marsh. 387; *Jackson* v. *Olty*, 8 Wend. 440; *Day* v. *Alanson*, 9 Wend. 223; *Bradstreet* v. *Middleton*, 5 Peters' R. 438. And Blackstone, in his Commentaries, vol. 2, p. 196, in treating of the wrongful possession of real estate, says, " But in the meantime, till some act is done by the rightful owner, to divest this possession and assert his title, such actual possession is *prima facie* evidence of legal title in the possessor ; and it may, by length of time, and negligence of him who hath the right, by degrees, ripen into a perfect and indisputable title." And again, in treating of real actions, and the time in which they may be barred, by limitation, he says of the writ of right, that it must be brought within sixty years, and concludes : " So that the possession of land in fee simple undisputedly for three score years, is at present a sufficient title against all the world, and cannot be impeached by any dormant claim whatsoever." 3 Black. Com. 196. Thus it seems that when the right to recover

by the use of the writ of right was lost, the occupant was held to be invested with the title to the land against the whole world, and his right could not be impeached by any dormant claim. And it is upon the principle, that when both the right of entry and the right of action are lost, by the operation of the statute of limitations, the title vests in the occupant, that these authorities proceed. They are not referred to for the purpose of showing that the title passes to the occupant, but to show that it is fairly deducible from them, that the occupant, under the statute for the period of limitation, acquires, by its operation, something more than a mere right to occupy the premises, and to defend his occupancy against mere strangers to the title, while he is in possession.

But when the right of entry and the right of action are both lost, it is difficult to perceive what practically remains to the former owner. While the statute has not transferred his title, nor can it have that effect, it does transfer his right of possession, and the title that remains is more in name than in substance. But, holding his title, he is postponed or prohibited by the statute from asserting it against the person holding the right of possession, until that right becomes extinct, or is united to his own right of property. And such is the operation of all limitation laws which deprive the owner of both the right of entry and the right of action. And this principle is recognized by this court in the case of *Newland* v. *Marsh*, 19 Ill. R. 376, where it is said: " The right is not, therefore, annihilated, by the limitation of the remedy. And such is the principle, under statutory provisions and equity rules, shutting out parties for *laches*, from asserting right or title against the innocent and vigilant. The law does not divest the right, but postpones or forbids the setting it up against the meritorious party only. * * * * The theory of limitation laws is, that they affect the remedy—limiting the period within which rights may be asserted, or remedies resorted to—affording a time and opportunity of enforcing rights by legal remedies, and leaving the right untouched, but regulating or limiting the use of the remedy for assertion of the right or recovery of the thing to which it relates. And upon no other ground can the second section of the act of 1839 be upheld and enforced, as within the legislative power." The language which the legislature has adopted, to declare the effect that shall be produced by the operation of this act, to bar a recovery, is the same in the first and second sections, and the same effect, as such bar, is given to both, by that decision. And it would seem that no distinction can be justly taken, where the bar is relied upon to prevent a recovery by the former owner, whether under the one or the other of these sections,

whatever might be held as to other effects and rights growing out of a bar under them. In this case all of the questions presented arise alone under the first section. Under the bar of that section, the right of property still remains in the former owner, but the right of possession has been acquired by the occupant, and is in him, or those claiming under him, and the former owner is shut out from asserting his right or title against them. As between them, the statute has closed the doors of the courts against his being heard, to assert this right, or setting. up his title. The holder of the former title may, doubtless, still assert his right against all persons, except the person holding under the statutory bar, and relying upon it. His title is such, that by regaining possession, and complying with the requirements of the statute of either 1835 or 1839, he would, thereby, again unite to his title, the right of possession, and it would become complete against the whole world.

We are told by Sir William Blackstone, in his commentaries, that one person may have the possession, another may have the right of possession, and still another the right of property. Under all acts of limitation which toll the entry, and bar the action, the occupant under the bar of the statute, has the right of possession, and the holder of the former by the title, has the right of property. This section of the act having been uniformly held to be a limitation law, it must be held to produce the same effect, and to confer the same rights as do other limitation acts. And we have seen that where the statute has tolled both the right of entry and the right of action, the remedy of the owner is gone, and he is precluded from asserting his right, or setting up his title against the party relying upon the statutory bar. And that the language of this section of the statute is broad enough to have that effect, cannot be for a moment doubted. It even professes to pass the title, but that it was not competent for it to do. The intention of the legislature is, however, as clear and manifest, that they intended to deprive the owner of the right of entry, as well as the right of action, as if it had been expressed in terms. And such being the legislative will, we are bound to give it effect.

We are, therefore, of the opinion, that under this section of the statute, when the bar has become complete, the former owner is prohibited from asserting his title against the occupant and those claiming under him, and relying upon the bar, whether he be in or out of the possession of the premises. As against such occupant, and those claiming under him, he can neither use his title for the purposes of recovery or defense, until he shall have destroyed the bar, by purchase, limitation, or some other mode, equally effectual.

It then follows that as the appellee had acquired all the rights which the first section of the statute can confer, prior to the commission of the acts complained of, that his right to recover was complete, whether he was in or out of the actual occupancy of the premises, and this too against the former owner as well as all others. But we do not wish to be understood as saying that this construction will be given to the second section of the act of 1839, that section not being involved in this controversy.

It only remains to determine whether the damages assessed by the jury are so excessive as to require that the verdict of the jury should be set aside. In all cases sounding in damages only, the jury necessarily have a large discretion in determining the proper. measure of compensation to be made for wrong inflicted, amounting almost to an exclusive right without control, yet courts have the power, and it is their duty to protect a defendant from grossly excessive damages in this class of cases. But courts should never interpose unless they are flagrantly wrong and oppressive. It is a question that must be left to the determination of the jury, and the court should never interpose, unless the damages are so disproportionate to the injury sustained, that it is manifest that the jury were actuated by prejudice, partiality, ignorance, or some improper motive. If men will disregard the peace and harmony of society by committing wrongs on others, we know of no means to curb them so effectual, and so proper, as heavy damages. The peace and good order of society require it, and courts can adopt no rule in cases of torts, but can only leave the finding of damages to juries where it has always been, except in cases of oppressive findings. The fact that a court may, from the evidence, conclude that the best measure has not been adopted in cases of trespasses or torts, has never been regarded alone as grounds for setting aside the verdict. In such cases it is not as it is in cases of breach of contract, as there it depends on computation, and if wrong, it is apparent and may be corrected. In this case, although the damages may be high, yet we are unable to say that they are oppressive. Nor does the finding indicate that the jury were actuated either by partiality, prejudice, ignorance, or any improper motive, and we cannot therefore reverse the judgment upon this ground.

We are upon the whole of this record, unable to perceive any error, for which the judgment of the court below should be reversed.

*Judgment affirmed.*