HENRY H. GAGE

*v.*

THADDEUS HAMPTON.

*Filed at Ottawa January 25, 1889.*

1. LIMITATION—*act of 1839—color of title.* A tax deed purporting to convey land to the grantee therein named, is good color of title.

2. SAME—*as to vacant and unoccupied land.* Where the holder of color of title, acquired in good faith, pays all the taxes legally assessed upon the land to which the color of title relates, for seven successive years, while it remains vacant and unoccupied, and then takes actual possession by enclosing the same with a fence, the bar of the statute will be complete, and the holder of such title may assert the same, either as a defense, or to regain possession when invaded.

3. EVIDENCE—*payment of taxes—parol evidence.* The payment of taxes may be proved by parol evidence. Tax receipts may be explained, and if a mistake has been made in the description of the land or in the name of the person who actually made the payment, resort may be had to parol evidence to rectify such mistake.

4. SAME—*sufficiency of evidence—to show payment of taxes.* To prove the payment of taxes for the years 1880 and 1881 by H. H. Gage, two tax receipts were given in evidence, that for the tax of 1880 reading, "Received of Asahel Gage, by H. H. Gage," and that for the taxes of 1881 reading, "Received of Asahel Gage," etc. Asahel Gage testified that he never paid any taxes on the property, and never had in his possession any tax receipts for taxes paid on the property; and H. H. Gage testified that he paid the taxes on the property from 1879 to 1886, both inclusive,— that for the years 1880 and 1881 he paid the taxes, and that he had the tax receipts ever since their issue, but could not tell how the name of

Asahel Gage appeared therein: *Held,* that the evidence showed that H. H. Gage paid the taxes for the two years named.

5. POSSESSION—*what may constitute:* It is not necessary that a man shall reside upon property in order to obtain or hold possession of it. Possession of land may be acquired and held in different modes,—by inclosure, by cultivation, by the erection of buildings or other improvements, or, in fact, by any use that clearly indicates an appropriation to the use of the person claiming to hold the property.

6. The holder of color of title in good faith, after the payment of all the taxes on the land for over seven successive years, fenced the same with a post and board fence, the fence being completed September 10, 1887. In the latter part of December, 1887, the former owner or his agent visited the property, and found most of the fence on the north and east sides of the lot gone, but on the south and west sides the fence was mainly standing as erected. The latter re-fenced the property, using that part of the fence and materials remaining, and supplying the balance: *Held,* that the act of re-fencing conferred no rights on the party, the original fences remaining being enough to notify him that the property had been reduced to possession, and that his entry was wrongful, and a trespass.

7. SAME—*how possession may be acquired.* The doctrine of this court is uniform, that a man can not take the law into his own hands, and regain by force a possession which he may be entitled to recover in an appropriate action.

8. The common law right to enter and use all necessary force to obtain possession from him who may wrongfully withhold it, has been taken away by our statute of forcible entry and detainer. Any entry is forcible, within the meaning of the statute, that is made against the will of the occupant.

9. CLOUD ON TITLE—*of the character of complainant's possession.* A claimant of the legal title to land can not maintain a bill in chancery to set aside an adverse claim as a cloud on his, when he obtains possession of the land forcibly and unlawfully. In equity, he will be treated as though out of possession. The case of *Fort Dearborn Lodge* v. *Klein,* 115 Ill. 177, does not conflict with the rule here announced.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. AUGUSTUS N. GAGE, for the appellant:

The taxes were paid by appellant under color of title to vacant property for the requisite length of time, and though the receipts for two of the years stated that the payment was

made by Asahel Gage by Henry H. Gage, and by Asahel Gage, the evidence showed that the payments were made, in fact, by Henry H. Gage, under his color of title, and this was sufficient to sustain his limitation. Rev. Stat. 1874, chap. 83, sec. 7; *Cofield* v. *Furry,* 19 Ill. 183; *Darst* v. *Marshall,* 20 id. 227; *Rand* v. *Scofield,* 43 id. 167; *Elston* v. *Kennicott,* 46 id. 187; *Lyon* v. *Kain,* 47 id. 200; *Rawson* v. *Fox,* 65 id. 200; *Coleman* v. *Billings,* 89 id. 183.

Plaintiff having taken possession under his limitation title, he must be treated as still in possession. Especially so as against the appellee, who has attempted to take possession by the commission of a trespass. *Hale* v. *Gladfelder,* 52 Ill. 91; *McDuffee* v. *Sinnott,* 119 id. 449.

Appellant having lawfully reduced the property to possession in July or August, 1887, no subsequent trespass by appellee could give him a standing to maintain a bill in equity. *Comstock* v. *Henneberry,* 66 Ill. 212; *Hardin* v. *Jones,* 86 id. 313.

Appellant has shown the requisite color of title in him by deed bearing date in 1877; that he has paid all taxes on the property from that time to 1886, being more than seven years; that the property was vacant all these years, and that after paying those taxes he took actual possession of the property. This constituted a good defense under the limitation laws of this State, and entitled him to ask affirmative relief of the court, in the premises.

Mr. H. S. McCartney, for the appellee.

Mr. Chief Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by Thaddeus Hampton, in the Superior Court of Cook county, against Henry H. Gage, to set aside three tax deeds as clouds on the title to lots 36 and 37, in the west half of block 1, in a certain subdivision of a certain eighty-acre tract of land in Cook county. The first tax deed named in the bill was executed on the 10th day

of February, 1877, the second was executed on February 15, 1881, and the third on the 18th of February, 1881. The defendant, Gage, put in an answer to the bill, in which he denied complainant's title and possession, and set up title and possession of the premises in himself. He alleged that he acquired color of title, in good faith, in 1877, while the property was vacant and unoccupied, and while it remained vacant he paid all taxes assessed on the property, for more than seven years, to-wit, for the years 1878, 1879, 1880, 1881, 1882, 1883, 1884, 1885 and 1886, and that afterward, and before the bill was filed, he took actual possession of the premises, and that since he took possession thereof he has continuously held the same, and is now in the possession thereof. Replication was filed to the answer, and the defendant also filed a cross-bill, in which substantially the same facts were set up as are contained in the answer. The complainant answered the cross-bill, and the cause proceeded to a hearing on the pleadings and proofs, and the court decreed in favor of complainant, and dismissed defendant's cross-bill.

The tax deed executed February 10, 1877, purporting to convey the premises in question to Henry H. Gage, was color of title, and it is not questioned that the deed was made in good faith. When the deed was executed, the premises were vacant and unoccupied, and the property remained vacant and unoccupied until September, 1887, when it was fenced by appellant.

As to the payment of taxes while the land was vacant, it is conceded that Gage proved payment for the years 1882, 1883, 1884, 1885 and 1886,—five successive years,—but it is insisted that the evidence fails to show payment for the years 1880 and 1881 by Henry H. Gage. We do not concur in this view. The receipt, introduced in evidence, for the tax of 1880, reads, "Received of Asahel Gage, by H. H. Gage," while the receipt for the taxes of 1881 reads, "Received of Asahel Gage." If the proof of payment rested alone on the words of the two receipts, the position of appellee,—that Henry H. Gage had

failed to prove payment of taxes for the two years in question,—. might be sustained. But such is not the case. Asahel Gage testified that he never paid any taxes on the property,—that he never had in his possession any tax receipts for taxes paid on the property. And Henry H. Gage testified that he paid the taxes on the property from 1879 to 1886, both inclusive; that for the years 1880 and 1881 he paid the taxes. Upon cross-examination the witness was asked:

Q. "How did it happen that two of the tax receipts which were offered in evidence recited the payment of taxes by Asahel Gage, and two of them by Asahel Gage, by Henry Gage?

A. "I can not state how the mistake occurred, or how the receipts were made out in that way. I paid, at the same time I paid these, over $1000 for other taxes, to the same collector of the West Side, and until this case was called up I did not find that there was any difference in the receipts,—in the method of making out the receipts." Witness continued: "I have had the receipts in my possession since they were issued— paid for them with my own money."

The payment of taxes may be proven by parol evidence. Tax receipts may be explained, and if a mistake has been made in the description of the land, or in the name of the person who actually made the payment, resort may be had to parol evidence to rectify such mistake. Here is the evidence of Asahel Gage, that he never paid any tax on the property, and of appellant, who testified that he paid the taxes for the years in dispute with his own money. If these witnesses testify to the truth, and it nowhere appears that they are unreliable, the fact is beyond dispute that appellant paid the taxes for seven successive years. In *Hinchman* v. *Whetstone*, 23 Ill. 185, it was held that proof of payment of taxes may be made otherwise than by the production of tax receipts. It is there said: "No reason is perceived why the payment of taxes may not be proved * * * by the verbal evidence of a witness, as well as the payment of money in any other case." In *Cole-*

*man* v. *Billings*, 89 Ill. 185, where the receipts showed payment by Billings and Parsons, it was held that it would have been competent to prove, if such was the fact, that the taxes were in fact paid by Billings, and that the name of Parsons was by some inadvertence included in the receipt. As the law has heretofore been settled by this court, we regard the evidence sufficient to establish seven successive years' payment of taxes by appellant.

The appellant, Gage, having established color of title made in good faith, and seven successive years' payment of taxes on the property while it was vacant and unoccupied, the next question to be considered is, whether, after the completion of the seven years' payment of taxes, he acquired possession of the land, so as to bring him within the provision of section 7, of chapter 83, of the statute entitled "Limitations," which reads as follows: "Whenever a person having color of title, made in good faith, to vacant and unoccupied land, shall pay all taxes legally assessed thereon for seven (7) successive years, he or she shall be deemed and adjudged to be the legal owner of said vacant and unoccupied land, to the extent and according to the purport of his or her paper title."

It is clear, from the evidence, that the property was vacant until July, 1887, and on the 12th day of that month Henry H. Gage employed the surveyor of Cook county to survey the lots and put a post and four-board fence around the property. On July 28 the surveyor notified appellant that the work was done. Within a few days after appellant received the notice, he went to see the property, and found that the surveyor had made a mistake, and fenced lots 36 and 37 on the east half of block 1, instead of lots 36 and 37 on the west half of the block. The surveyor then made a new survey, and removed the fence, and put it around the lots in controversy. The fence was completed by the 10th day of September, 1887, and appellant then paid the surveyor for his labor. Thus far there is no controversy between the parties, and it is an undisputed

fact that on the 10th day of September, 1887, appellant, Gage, had the property in controversy enclosed with a post and four-board fence. This act of appellant gave him possession of the property under color of title. By taking possession, after he had paid taxes for seven successive years while the lots were vacant, he did all the law required, and his title to and rights in the property became fixed. He then had not only a title which he could invoke as a shield or defensive title to protect him in the possession of the lots, but if another should, by some means, obtain possession of the property, he had a title under which he might sue and recover the possession of the property.

This is not a new question in this court. In *Hale* v. *Gladfelder*, 52 Ill. 91, a title acquired in the same manner as appellant acquired his title was fully considered, and it was there held, that where the bar of the statute has become complete under the second section of the act of 1839, (which is section 7 of our present Limitation act,) by the concurrence of claim and color of title acquired in good faith, payment of taxes for seven successive years under such color of title, and the actual taking of possession of the premises, such bar can be used as a shield to protect the possession against every one; and if the possession be invaded, or the premises again become vacant, and another make entry, even if the latter hold the paramount title, the holder of the color of title may sue and recover his lost possession. The bar of the statute having become complete, the right of the person entitled to its benefits to have and enjoy the possession, is as perfect as though he were actually invested with the title; and as against him, the holder of the paramount title can not use it for the purpose either of recovery or defense. The same doctrine was announced in the late case of *McDuffee* v. *Sinnott*, 119 Ill. 450. It is there said: "In view of the repeated decisions of this court, it would be a fruitless consumption of time to enter upon a discussion of the cases decided outside of this State, for whatever the rule may be elsewhere, it is now well settled in this State, that

whenever the bar of the statute has become absolute, and the party ·entitled is in possession under it, it is thereafter just as available for attacking as for defensive purposes, and its availability in this respect will not depend at all upon the occupant continuing in the actual possession of the property. His rights in that respect are precisely the same as those of any other absolute owner of land. He can vacate it or occupy it, just as convenience or interest may dictate."

It will not be necessary to cite other cases in this State on the question, as the law is too well settled to admit of controversy.

It appears, however, from the evidence, that in the latter part of December, 1887, appellee or his agent visited the property, and, as they claim, found the most of the fence on the north and east sides of the lots gone, but on the south and west sides the fence was mainly standing as originally erected. Finding the property in this condition, appellee re-fenced it, using that portion of the fence and material which had been put on the property by appellant, and supplying enough other material to make a good and substantial fence. The act of re-fencing the property conferred no rights upon appellee. As has been heretofore said, when Gage, in September, 1887, fenced the property, he lawfully acquired the possession thereof. That possession was never relinquished or abandoned, and no person had any right to invade that possession. When the agent of appellee visited the property, in December, 1887, although some of the fence had been torn down by some unauthorized person, there was enough to notify him that the property had been reduced to possession by another. It is not necessary that a man should live on property in order to obtain or hold possession of it. Possession of land may be acquired and held in different modes,—by enclosure, by cultivation, by the erection of buildings or other improvements, or, in fact, by any use that clearly indicates an appropriation to the use of the person claiming to hold the property. (*Trues-*

*dale* v. *Ford*, 37 Ill. 210.) When appellee saw that the property had been reduced to possession by another, by enclosing it with a fence, he had no right to interfere, in any manner whatever, with the possession of the property. His entry was that of a wrongdoer. He was a trespasser. (*Lee* v. *Town of Mound Station*, 118 Ill. 319.) If he claimed the title, when he found the lots in the possession of another his remedy was ejectment, where the title could be settled in a court of law. Surely he could not lay a foundation for a bill in equity by unlawfully invading the possession of another. Equitable rights can not be acquired in that way. In *Comstock et al.* v. *Henneberry*, 66 Ill. 213, where a bill in equity was filed by one in the actual possession of land, for equitable relief, as it appeared that the possession was obtained unlawfully and forcibly, it was held that he could not be allowed to take advantage of his own wrong, and that he would be treated in equity as out of possession. In *Hardin* v. *Jones*, 86 Ill. 313, where a bill was filed to quiet title, the doctrine of the case *supra* was approved, and it was held that the possession that confers jurisdiction must have been acquired in a lawful way. If obtained by violence, or by the use of unfair or corrupt means, a court of equity will not lend its aid.

*Gage* v. *Williams*, 119 Ill. 564, is cited and relied upon by appellee as an authority to sustain his position. The facts in that case, however, are so different from the facts shown here, that the decision can have no bearing. There the property was in possession of Goslee, through whom the complainant derived title as early as 1869, and one Van Allen had charge of the property for Goslee from 1869 to the winter of 1885. In 1881, while Van Allen occupied the relation of tenant, he took a lease from the appellant in the case. A leasing by the tenant of Goslee from a stranger could not lawfully deprive Goslee of his possession. Moreover, if the appellant in the case cited ever had possession, there was evidence that such possession was abandoned.

Reliance is, however, placed by appellee on the case of *Fort Dearborn Lodge* v. *Klein*, 115 Ill. 177. We do not think that case has any bearing here. There is but one question decided in that case,—that is, the plea of *liberum tenementum* is a proper plea in an action of trespass *quare clausum fregit*, and that it was error to instruct the jury to disregard such a plea. Upon an inspection of this record, it will be found that Hampton did not enter under paramount title. As heretofore shown, when Gage took possession of the lots by enclosing them with a good and substantial fence, in September, 1887, his title, under our statute, became and was the paramount title,—in other words, as is said in the *McDuffee case, supra,* his rights were the same as those of any other absolute owner. And in December, 1887, when Hampton entered upon the premises and undertook to take possession thereof, he occupied the position of one without title entering upon the possession of another who held the absolute title to the property. Occupying this position, he was a mere trespasser. If Hampton had been seized in fee of the premises when he entered, and had entered in a peaceful manner, then he might rely upon the rule laid down in *Fort Dearborn Lodge* v. *Klein*. But such was not the case, and hence the decision in that case has no bearing on the facts presented by this record.

The judgment of the Superior Court will be reversed, and the cause remanded for further proceedings consistent with this opinion.        *Judgment reversed.*

Mr. Justice Bailey, dissenting:

I am unable to concur with the majority of the court either as to the facts or the law of this case. Hampton, the complainant, filed his bill, claiming to be the owner in fee and in possession of lots 36 and 37, in block 1, etc., in the city of Chicago, and praying to have three several tax deeds removed as clouds upon his title. Henry H. Gage, the defendant, in his answer and cross-bill, claims the paramount title under and by virtue of one of said tax deeds, and the payment of

taxes thereunder for seven consecutive years while the lots were vacant and unoccupied and an entry into said lots after the expiration of the seven years limitation. The main question of fact relates to the payment of the taxes for the years 1880 and 1881.

Of the three tax deeds, the one under which the defendant now claims title, was executed to the defendant February 10, 1877. Subsequent to the date of this deed, viz., September 23, 1878, both lots were sold for the taxes of 1873 and 1874, and October 18, 1878, lot 36 was sold for the taxes of 1877, the purchase at both sales being made in the name of Asahel Gage, and the certificates of sale being issued to him. In pursuance of these two sales tax deeds were executed to Asahel Gage, dated respectively February 15 and 18, 1881. September 15, 1882, Asahel Gage quitclaimed his interest in said lots to the defendant.

The defendant offered in evidence a contract under seal between himself and Asahel Gage, bearing date December 6, 1880, in which, after reciting that they were then and had been theretofore engaged in the business of 'purchasing property at tax sales in Cook county, Illinois, and that their business relations were such that it was proper and necessary that written articles of agreement should be entered into between them, it was provided, among other things, in substance, that Asahel Gage authorized and directed Henry H. Gage to use his, said Asahel's, name at tax sales, for the purchase of property, both for said Asahel and said Henry H., and to use his name for the purpose of serving tax sale notices, and to take out tax deeds in his name, upon certificates issued to him and belonging to either party. And said Asahel agreed, upon reasonable request, to quitclaim to said Henry H. such pieces of property as might belong to him, and to assign to said Henry H. all such certificates of sale as he might be interested in, whenever requested so to do. Said Asahel also ratified and confirmed anything theretofore done or which

7—127 ILL.

might thereafter be done by said Henry H. in accordance with the intent and spirit of said agreement, and it was provided that said agreement should extend to and embrace all matters in the past and in the future within its spirit and intent.

The defendant proved the payment of taxes by himself on the lots in question for the years 1882, 1883, 1884, 1885 and 1886. To prove the payment of the taxes for the year 1880, he introduced in evidence a tax receipt which read, "Received of Asahel Gage by Henry H. Gage" the taxes of 1880, and to prove the payment of the taxes of 1881, he introduced in evidence a tax receipt which read, "Received of A. Gage" the taxes of 1881. There can be no doubt that these receipts, unexplained, prove payment of taxes for and on account of Asahel Gage and this is so irrespective of who actually made the payment or whose money was used in making it; and being made on account of Asahel Gage, it will be presumed, in the absence of proof to the contrary, to have been made under and in support of the title standing in his name.

No question is made but that tax receipts are susceptible of explanation by parol proof, and that the presumptions arising therefrom are susceptible of being thus rebutted, but the proof by which such explanation is made should be clear and convincing. In *Winchester* v. *Grosvenor*, 44 Ill. 425, where there was a question of explaining by parol a receipt for money executed by one party to the other, this court said: "That a receipt may be explained by parol is conceded, but the proof by which it is done must be clear and unmistakable. A written receipt is evidence of the highest and most satisfactory character, and to do away with its force, the testimony should be convincing, and not resting in mere impressions, and the burden of proof rests on the party attempting the explanation." See also *Rosenmueller* v. *Lampe*, 89 Ill. 212.

In the present case the facts established or attempted to be established by the evidence given in explanation of the receipts are, that Asahel Gage did not pay the taxes; that Henry H.

Gage did pay them, and that he paid them with his own money. Neither of the witnesses attempts to state that the payments were not made on account of and for Asahel Gage, and under and in support of the tax titles standing in his name. These, the material presumptions arising from the receipts, are in no way rebutted. Asahel Gage, as it seems, was a resident of the State of New Jersey, and had employed Henry H. Gage to transact all business arising out of his purchases of property at tax sales, and the fact that Asahel Gage did not pay the taxes, and that Henry H. Gage did pay them, and that he paid them with his own money, are not inconsistent with the presumption arising from the receipts that he made such payments under the Asahel Gage tax titles. If the fact had been otherwise it would have been easy for Henry H. Gage when on the stand as a witness in his own behalf to so state, but his absolute silence on that subject furnishes additional ground to conclude that the receipts record the precise truth in relation to the transaction.

To establish a title by limitation, a party must not only show the payment of taxes for seven consecutive years under claim and color of title, but he must show that all such payments were made under color of the same title, and a payment of taxes in fact made in support of and under color of one title, can not be availed of as a payment under another and adverse claim of title. As said by this court in *Cofield* v. *Furry*, 19 Ill. 183: "The true question in such case is, under what title were the taxes paid? If they were paid under no claim and color, or under title adverse to that to which they are sought to be applied, the payment is unavailing." This doctrine was repeated and approved in *Hardin* v. *Gouveneur*, 69 Ill. 140. In that case it is held that while tax receipts may be explained or payment proved by parol, the evidence must be clear not only that the payments have been made, but that they were made under claim and color of the title interposed as a bar to the recovery.

The proof in this case furnished by the tax receipts being that the payments of taxes for the years 1880 and 1881 were made under the Asahel Gage title, a title wholly adverse to that under which the defendant now claims, and there being no proof to the contrary, the defendant has, in my opinion, wholly failed to make out the payment of taxes for seven consecutive years under claim and color of title, and his defense has therefore failed.

I am also of the opinion that, at the time of filing his bill, the complainant was in lawful possession of the lots in question, and that his possession was sufficient to authorize him to file his bill to remove the tax deeds as clouds upon his title. Admitting that the defendant took possession of and fenced said lots in August, 1887, as he claims, it appears without contradiction, that in the following December, and prior to filing his bill, the complainant went to said lots and found them but partly enclosed, a considerable portion of the fence built around them by the defendant having been removed by some person unknown. The complainant thereupon peaceably and without force took possession and proceeded to enclose the lots with a fence of his own, and held possession under such entry at the date of filing his bill. As I construe the evidence, he was then the owner of the paramount title, and as such, had the right of possession and of entry, and was justified in taking possession, so long as he was able to do so peaceably and without force. Such would undoubtedly be his right at common law, and such was his right under our Statute of Forcible Entry and Detainer, as interpreted by this court in *Fort Dearborn Lodge* v. *Klein*, 115 Ill. 177.

I am of the opinion therefore that the court below, sitting as a court of equity, had jurisdiction, and that it decided correctly in holding that, under the evidence the defendant had failed to show title as alleged in his answer and cross-bill. The decree cancelling the tax deeds and removing them as clouds on the complainant's title should, in my judgment, be affirmed.