SAMPSON T. MICKEY *et al.*

*v.*

SAMUEL P. BARTON *et al.*

*Opinion filed February 21, 1902.*

1. TRIAL—*how to raise objection that receipts offered in evidence have been altered.* A party desiring to avail himself of an objection that the tax receipts introduced in evidence showed upon their face that certain words had been added in different ink, should introduce testimony showing such fact or incorporate the receipts into the record for the inspection of the reviewing tribunal.

2. LIMITATIONS—*title acquired under section 7 of Limitation act may be affirmatively asserted.* One in possession of land under a deed from parties who had paid the taxes thereon for over seven successive years under color of title consisting of a tax deed acquired in good faith, has a title, under section 7 of Limitation act, from which he may maintain a bill to remove a cloud.

3. DEEDS—*when deed is void.* A deed executed and acknowledged without containing the name of a grantee, but in which a grantee's name is subsequently inserted by a person having no power of attorney to amend the deed, is void, and cannot be availed of as title.

4. EQUITY—*trespasser cannot have the benefit of his own wrongful act.* One taking possession of land as a mere trespasser cannot, in a proceeding in equity involving the title to the land, be permitted to take the benefit of his own wrongful act.

APPEAL from the Circuit Court of Lawrence county; the Hon. E. E. NEWLIN, Judge, presiding.

C. J. BORDEN, S. B. ROWLAND, and GEE & BARNES, for appellants.

J. E. McGAUGHEY, E. B. GREEN, and W. F. FOSTER, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

On the 22d of April, 1895, appellants filed a bill in the circuit court of Lawrence county against appellee Samuel P. Barton, praying for the removal of a deed held by him, as a cloud upon their title to the north half of the south-east quarter of section 15, township 4, north, range 12, west, in said county, and other relief. Appellee Maria Staninger, after said bill was filed, by leave of court, on her own motion, was made a party defendant to the bill. Each of the appellees answered the bill, and each filed a cross-bill claiming title, respectively, to the same land.

Appellants claim title through two sources, namely: *First*, that the land was entered in 1857 by Isaac Parsons; that said Parsons conveyed to C. J. Borden on the 7th day of November, 1893, and that Borden and wife conveyed to appellant Mickey on August 27, 1894, and that Mickey conveyed the undivided half to appellant Taylor October 19, 1894; *second*, that on April 15, 1863, G. F. Nigh, the sheriff of said county, made and delivered to Joseph Evans, of said county, a tax deed for said land upon a sale made to him for taxes, made the 25th day of July, 1859, and that said Evans died in the summer or fall of 1867, leaving a number of children as his heirs, and that he and his heirs paid the taxes upon this land after the purchase at the tax sale, for ten years, and that during the months of January and February, 1895, appellants received quit-claim deeds from all of the heirs of said

Joseph Evans; that the land was vacant and unoccupied from the time of its entry to September, 1894, when the appellant Mickey took possession of it and remained in possession from that time until the time of the filing of said bill; that the land was bottom, swamp land, covered with a growth of timber, and that appellants, during the fall and winter of 1894-95, deadened the timber on between forty and fifty acres of the land and cleared three acres of it; that in October, 1894, appellee Barton brought a suit in ejectment for this land in the circuit court of Lawrence county against appellant Mickey; that the trial of said suit was entered upon at the February term, 1895, and the testimony heard, in which appellant Mickey testified that he was the owner of the land and relied upon the two sources of title above set forth, and that he had gone into possession in September, 1894, and made the improvements above mentioned and was still in possession; that the cause was heard before the court without a jury, and after the hearing, and while the court had the cause under consideration, on the 20th day of April, 1895, appellee Barton, with a force of men, went out and took possession of the land, strung two wires around it by attaching them to trees as near to the line as trees could be found for that purpose, built a small house or shack on it, left a man in possession and came and dismissed his ejectment suit, when appellants, on the 22d of the same month, filed their bill as above.

Appellee Barton in his cross-bill claimed that the land was entered by Isaac Pearson, of Crawford county, who had died several years before that time, leaving Elizabeth Shoulders his daughter and only heir, and that he, Barton, had on the 29th day of September, 1894, purchased said land and received a quit-claim deed therefor from said Elizabeth Shoulders and her husband, and that he had had possession of said land for ten years. He also claimed title by virtue of a tax sale, under which a tax deed was issued to H. J. B. Wright on December 9,

1884, and that said Wright had conveyed said land to him by quit-claim deed of March 6, 1895, which he placed of record on July 12, 1895.

The cross-bill of Maria Staninger claimed title by virtue of a tax sale made to Warren Emerick on May 5, 1886; the issuance to him of a certificate of purchase; the assignment of that certificate to Noah Pepple; tax deed made to Noah Pepple on that purchase March 11, 1889, and a quit-claim deed from Noah Pepple and wife to Charles Staninger, dated September 13, 1890, and a quit-claim deed from Charles Staninger to Maria Staninger on the 9th of April, 1894.

Answers and replications were filed to the bill and cross-bills by the respective parties. The cause was continued from term to term until the February term, 1901, of said court, when the chancellor entered a decree dismissing the appellants' bill and the cross-bills. From that decree this appeal is prosecuted.

The appellants assign errors, and cross-errors are assigned by appellee Maria Staninger. The only error insisted upon by appellants is, that the court did not decree the title to be in them, and the cross-error insisted upon by appellee Staninger is, that the court did not decree the title to be in her, or did not, in some manner, upon some of the bills, pass upon the title.

The entry book and the certificate of entry, the original patent having been lost or destroyed without being placed on record, both show that this land was entered on September 1, 1857, by Isaac Pearson. Concerning this entry, Isaac Parsons, a witness offered by appellants, testified that he was born in 1831; that he had been a railroad conductor for forty years; that for many years he was a resident of Vincennes and was a conductor on the Ohio and Mississippi railway; that he was acquainted in Lawrence county in 1854 and that Judge Bowman was his attorney; that said Bowman lived in Lawrenceville, in said county, and that through Judge Bowman, acting

as his attorney, he entered land in that county and paid
for the same; that a patent was issued to him, which.
with other papers, was destroyed by fire; that he could
not state the section in which the land was, but that it
was low, swamp land in the Embarras bottom and within
four or five miles of Lawrenceville; and that he never
entered or owned but the one piece of land in Lawrence
county.     He testified that Judge Bowman always called
him *Pearson*, and not Parsons.     He further stated that
afterwards, and while at LaCrosse, Wisconsin, in 1893, he
conveyed this land to C. J. Borden; that while he owned
the land, Capt. A. I. Judy, of Lawrenceville, Illinois, acted
as his agent and was authorized to sell the land.     Capt.
Judy testified that he had known Parsons for forty years;
that he was acquainted with the land in controversy;
that Parsons claimed to own it many years ago, and em-
ployed him to sell it or to make a trade with one Wise,
and that Parsons told him that the land was in section 15.
James C. Allen, a lawyer of Olney, testified that he knew
Isaac Pearson, who lived in Crawford county from 1848
until his death, and that some time in the fifties, as he
was passing Pearson's house, Pearson gave him some
money to pay the taxes on some land in Lawrence county,
claiming that he had some land entered there, and that
he paid the tax on the land; that he did not know the
numbers of the land now, nor did he know whether the
land upon which he paid was the land in controversy;
that Pearson was a flat-boat pilot and had spoken of
entering land in Lawrence county, and that he had a
daughter, Bettie.     Perry Pearson testified that he was
a nephew of Isaac Pearson, of Crawford county; that he
died about fifteen years ago, and left Elizabeth Shoul-
ders his only child and heir; that Isaac Pearson claimed
to own some land in Lawrence county; that he said it
was overflowed, and was about five miles north of Law-
renceville; that the conversation took place in 1866; that
at that time Pearson offered to lease the land to the wit-

ness, but the witness did not accept the terms, nor did he, during the life of Pearson, see the land. Thomas Mills testified that in 1859 he saw a man on the land in question who said his name was Pearson and that he lived up north; that witness was then nineteen years old; that the man who gave the name of Pearson was a man of mature age; that he had an ax and cut some brush; that he went away and he never saw him again. Elizabeth Shoulders, the daughter of Isaac Pearson, of Crawford county, testified that her father died eighteen or twenty years ago; that she did not know the land in controversy; that she did not know that her father was ever upon the land and never heard him speak of it.

This was all the evidence as to the identity of the person who entered this land. From it we are disposed to hold that it was entered by Isaac Parsons, and that the name "Pearson" appearing in the patent was due to the habit of Judge Bowman, who was Parsons' attorney and who had the entry made, of calling Parsons *Pearson.* While there is evidence showing that for ten or fifteen years prior to the time appellants got title to this land various persons were upon the land and cutting off saw-logs and taking timber from it at various times under claims of some of these tax titles shown by the record, there is no evidence that is sufficient to show that prior to the time appellants took possession any one had such possession as is contemplated by law when the term possession is referred to. (*Travers* v. *McElvain,* 181 Ill. 382; *Harms* v. *Kransz,* 167 id. 421.) If Isaac Parsons entered this land and sold it to Borden in 1893, and Borden sold it to Mickey in 1894, and he took such possession as would be notice to the world of his claim of ownership, then he and appellant Taylor had title to the land, unless there was a paramount title in some other of these claimants.

There is no dispute as to the purchase of these lands by Evans at the tax sale in 1859, and the issuing of a deed to him in 1863 under that sale; nor is there any question

but that he and his heirs paid the taxes upon this land for ten years from the date of that deed. No judgment or precept of sale or affidavit for deed was put in evidence in its support, but it was stated by appellants at the trial that the deed was only relied on as color of title. From the record it appears that when the tax receipts were offered it was objected that certain receipts showed upon their face that they were originally made to and paid by John Wolf, and that there were in the receipts, added in a different ink and different handwriting, the words, "Agent for the heirs of Joseph Evans." These receipts were admitted in evidence, and there was no evidence of any witness showing that there was in fact different ink used or the writing in the receipt was different to that of the body of the receipt. The only thing in the record tending to show that this objection exists is the statement of counsel making the objection. Such statement cannot be accepted by this court as evidence. If counsel desired to avail themselves of that objection, and such fact was apparent from the receipts themselves, the question should have either been raised by the introduction of testimony showing the fact, or the rules of this court should have been complied with and the receipts themselves incorporated into the record for the inspection of the court. We are not authorized to predicate the finding of a fact upon the mere objection of counsel, although such objection may appear in the record.

As to the record title relied upon by appellee Barton, the evidence showed that on the 29th day of September, 1894, Elizabeth Shoulders and her husband, for a consideration of $20, made and delivered to him a quit-claim deed, which upon the same day he placed of record. Unless Isaac Pearson, the father of Elizabeth Shoulders, was the person who entered this land, Barton received nothing from that deed except a color of title. At the time he received it appellant Mickey was in possession of the land. He also had a quit-claim deed from H. J. B.

Wright, dated March 6, 1895. The evidence does not show
when this deed was received, but does show that it was
not placed of record until the 12th of July, 1895. The
evidence further shows that at the time this deed was
received the name of Barton, as grantee, did not appear
in the deed, but that the deed was executed by Wright
in California and sent to an agent at Lawrenceville, with
no grantee named, and that the agent authorized Barton
to write his name in it. Wright's title was predicated
upon a tax deed dated December 9, 1884, made to him by
the county clerk of Lawrence county. There is no evi-
dence that under that title Wright paid the taxes for the
statutory period, or any evidence, in fact, in support of
a title under that deed, other than the deed itself. The
evidence showed that in October, 1895, Barton brought
a suit in ejectment against appellant Mickey, charging
him with being in possession of the land, and while the
suit was still pending, and after the evidence had been
heard and after Mickey had testified setting up his title
and to facts tending to show the lawfulness of his pos-
session, Barton took a tortious and forceable possession
of the land and dismissed his ejectment suit. In so far
as Barton's rights in this case should depend upon his
testimony, sufficient appears in this record to warrant a
court in disregarding the whole of it. The evidence of
Charles Staninger shows that in 1890 Barton was pre-
tending to act as the agent of Noah Pepple, who had a
tax title to this land; that Pepple wanted to sell the
land and took Staninger to Barton to have Barton assist
in making the sale; that Barton there said to Staninger:
"This is one piece sold for taxes that has a good title;
I knew Pearson personally; he was a bachelor; died
a bachelor and never had any heirs, and none but a
man's heirs can break a tax deed." Charles Staninger
stated that upon that information he bought the land
and arranged with Barton to be his agent to look after
and sell it; that afterwards he was sued in ejectment for

the land, and that Barton told him to get an attorney
and that he, Barton, would do the "trigger" work and
they would beat them; that he next saw Barton and
asked him what about the land suit, and Barton said,
"I'll beat it." The witness said he then conveyed the land
to Maria Staninger, the appellee, and saw Barton and
so told him; that Barton then said, "I have got it beat."
The witness asked how much he owed him, and that Bar-
ton said, "You are not in it," and informed him that he
had bought the land from Bettie Shoulders and that he
now had the title. Charles Staninger is corroborated by
his son, Herbert. Elizabeth Shoulders testified that when
Barton came to get her deed he told her that her interest
in the land was gone and did not amount to anything,
but that he was lawing about the title; that he was not
lawing for himself, but for other parties. Jesse Shoul-
ders, husband of Elizabeth, corroborated her in this state-
ment. T. J. Cochran testified that he sold Barton the
lumber to build the shanty or shack on this land, on April
20, 1895, and that Barton said at that time that he wanted
to use it that day; that he wanted to stay right there
and wanted it quick; that he had come a pretty game;
that he had caught them napping; had got into posses-
sion and wanted to hold it. This evidence shows that
Barton was acting in bad faith with Charles Staninger,
whom he induced to buy the Pepple title, and also shows
that Barton was indifferent as to the means so that the
end might be accomplished. The affidavit for Pepple's
tax deed had no signature to it and was properly rejected
as evidence, and as the Staninger title was based upon
that tax deed, which was no more than color of title, and
under which neither payment of taxes had been made nor
possession acquired or anything to make title by virtue
of that color, the court properly dismissed her cross-bill.

As to the possession of the appellants, the testimony
abundantly shows that appellant Mickey took possession
in the fall of 1894, prior to any deed received by Barton;

that he had the land surveyed by the county surveyor; that he deadened between forty and fifty acres of timber on the land; that he cleared about three acres of it; that on February 28, 1895, appellants posted written notices, —some eight or nine of them,—around over the land in question, describing the land and warning all persons against trespassing upon it, designating it in the notices "our land," and signed by both of them; that on the 30th day of March, after these notices were up, Barton came and strung one wire around this tract of land, attaching it to trees, which wire was as high as ten or twelve feet, in many places, from the ground, and that appellants cut that wire and took it down, and that afterwards, on the 20th of April, he came and put two more wires around, and started to build a shanty, and put a man in possession of it and dismissed his suit in ejectment. It is thus apparent that the identity of the person who patented this land may still remain in doubt and yet appellants would have a perfect title. Evans had bought the land and paid the taxes for ten years. Appellants had acquired Evans' title while they were in actual possession of the land, and under the provisions of section 7 of chapter 83 of our statutes, entitled "Limitations," their possession, in conjunction with the colorable title derived from Evans, the good faith of which is not questioned, was perfected and could as well be asserted by them in a procedure to remove the clouds from their title as it could be availed of for a defense when their title was attacked. *Gage* v. *Hampton*, 127 Ill. 87; *Hale* v. *Gladfelder*, 52 id. 91; *McDuffee* v. *Sinnott*, 119 id. 449; *Travers* v. *McElvain*, 181 id. 382.

The deed from Wright to appellee Barton was executed in California and acknowledged without the name of any grantee being in the deed. It was sent to Lawrenceville to one Hardy, a half-brother, who says that he had no power of attorney to amend it or insert the name of a grantee, and that he handed the deed to Bar-

ton and directed him to write his own name in it as grantee, which he did. This deed was void, and cannot be availed of by Barton as title. *Chase* v. *Palmer*, 29 Ill. 306; *Whitaker* v. *Miller*, 83 id. 381; *Richey* v. *Sinclair*, 167 id. 184.

Barton testified that before he took possession of the land he heard that appellants were in possession and were deadening the timber, and that when he did take possession he found that they had deadened between forty and fifty acres of it and had cleared part of it. Under the facts shown by this record, when Barton entered upon this land he was a mere trespasser and wrongdoer, and cannot, in a proceeding in equity, be allowed to take the benefit of his wrongful act. *Gage* v. *Hampton*, 127 Ill. 87; *Lee* v. *Town of Mound Station*, 118 id. 304; *Comstock* v. *Henneberry*, 66 id. 212; *Hardin* v. *Jones*, 86 id. 313.

From a careful review of this entire record we are of opinion that the chancellor erred in dismissing appellants' bill, and that he did not err in dismissing the cross-bills of appellees.

The decree is affirmed in so far as it dismisses the bill of appellees for want of equity and is reversed in so far as it affects the rights of appellants, and it is ordered that this cause be remanded to the circuit court of Lawrence county, with directions to enter a decree finding the issues for appellants and finding the title in them, and setting aside the deeds held by appellees as clouds upon appellants' title, and said court is directed to cause an account to be taken of the taxes paid by either of the appellees under and by virtue of the tax titles relied upon by each, and that the appellants be required to reimburse the appellees for the taxes so paid, with legal interest.          *Reversed in part and affirmed in part.*